WASHINGTON INSURANCE COMPANY *vs.* JAMES T. WHITE.

A vessel insured for a year by a policy which provided that, if she was "on a passage at the end of the term," the risk should continue until arrival at "port of destination," sailed from the Chincha Islands on a voyage to Europe, and put into Callao on the mainland, one hundred and twenty miles from the islands, but which is the port of entry for the islands, and where vessels bound from the islands obtain the necessary clearance, water and crew for the further voyage. While there, the year expired. *Held*, that the vessel was not "on a passage" within the meaning of the policy; and that the risk ended with the year.

CONTRACT to recover an additional premium on a policy of insurance issued by the plaintiffs to the defendant on the ship

Louis Walsh, for one year from August 17, 1867, and containing this clause: " If on a passage at the end of the term, the risk to continue at *pro rata* premium until twenty-four hours after arrival at port of destination, and no longer."

The case was submitted to the judgment of the superior court, and, on appeal, of this court, upon the following agreed facts: " At the end of the year the Louis Walsh was at Callao, having sailed from the Chincha Islands the day previous. She had taken a cargo at the Chincha Islands, and was bound to the Canary Islands. The Chincha Islands are a group of three small islands situated in the Pacific Ocean, off the coast of Peru, distant about fourteen miles from the shore; are valuable for large deposits of guano; belong to Peru; but have no port or custom-house, and no clearance can be effected there. Vessels carrying guano from the Chinchas clear from Callao, and when bound to these islands are obliged to call at Callao, enter at the custom-house, and get a permit to load. Callao is on the mainland, and one hundred and twenty miles distant from the Chinchas. Vessels on their way to the Chinchas are usually detained at Callao two or three days, during which time the crew almost invariably desert, and it becomes necessary to ship a new crew at Callao to work the vessel to and from the Chincha Islands, and to load her while there. On the return to Callao, these men, usually natives, are discharged, and a crew of seamen shipped for the voyage. Vessels, after loading at the Chinchas, get their supply of water at Callao for the voyage, and are seldom detained there less than two days."

If, upon these facts, the court should be of opinion that the continuation clause in the policy attached, then judgment was to be rendered for the plaintiffs for $315.56 and interest; otherwise, judgment for the defendant.

*H. C. Hutchins & A. S. Wheeler*, for the plaintiffs, besides cases cited in the opinion, referred to *Bond* v. *Nutt*, 2 Cowp. 601; *Wright* v. *Shiffner*, 2 Camp. 247; *Thellusson* v. *Fergusson*, 1 Doug. 361; *Robinson* v. *Manufacturers' Insurance Co.* 1 Met. 143; *Thompson* v. *Taylor*, 6 T. R. 478; *Mackenzie* v. *Shedden*, 2 Camp. 431; *Horncastle* v. *Swart*, 7 East, 400; *Riley* v. *Hartford Insurance Co.* 2 Conn. 368.

*F. B. Dixon,* for the defendant, besides cases cited in the opinion, referred to *American Insurance Co.* v. *Hutton,* 24 Wend. 330; *Cunard* v. *Hyde,* El., Bl. & El. 670, and 2 El. & El. 1; *Wilson* v. *Rankin,* Law Rep. 1 Q. B. 162; *Graham* v. *Barras,* 5 B. & Ad. 1011; *Pittegrew* v. *Pringle,* 3 B. & Ad. 514; *Thompson* v. *Gillespy,* 5 El. & Bl. 209; *Giles* v. *The Cynthia,* 1 Pet. Adm. 203; *Thompson* v. *Faussat,* Pet. C. C. 182; *Blanchard* v. *Bucknam,* 3 Greenl. 1.

GRAY, J. It is doubtless true, as argued by the learned counsel for the plaintiffs, that if this vessel had been insured by a voyage policy from Callao to the Chincha Islands and thence to another port, the going into Callao, after leaving the Chincha Islands, for a clearance and a supply of water and change of crew, would not have been a deviation, if it was in the usual course of trade upon such a voyage. *Parsons* v. *Manufacturers' Insurance Co.* 16 Gray, 463. *Harrower* v. *Hutchinson,* Law Rep. 4 Q. B. 523. But it by no means follows that while in the port of Callao for that purpose, she was on a passage, within the meaning of the continuation clause in a time policy not mentioning particular ports or voyages.

A nearer analogy is afforded by the case in which it was held by Lord Ellenborough and the whole court of king's bench that under a policy of insurance " at and from Portneuf to London, warranted to sail on or before " a certain day, a vessel which had left Portneuf and dropped down the St. Lawrence thirty miles (with a sufficient crew for river navigation, but not for the voyage to London) to Quebec, which was the nearest place at which she could obtain a clearance, had not sailed. *Ridsdale* v. *Newnham,* 4 Camp. 111; *S. C.* 3 M. & S. 456.

But the safest guides in the interpretation of this policy are to be found in the adjudications of this court upon time policies containing words which, if not exactly identical, may for the purposes of this case be deemed equivalent.

In *Wood* v. *New England Insurance Co.* 14 Mass. 31, the point adjudged was that a vessel, which at the expiration of the year was actually in a port into which she had been carried by overwhelming force while proceeding on her voyage on the high

seas, was "at sea" within the meaning of such a clause. The authority of the decision has been limited to that point, and the more general *dicta* of Chief Justice Parker in delivering the opinion disapproved, in the later cases. See *Gookin* v. *New England Insurance Co.* 12 Gray, 510–514.

In *Bowen* v. *Hope & Merchants' Insurance Cos.* 20 Pick. 275, and 12 Gray, 512 note, the vessel which was held to be " at sea," and " on a passage," had left her port of lading, fully prepared to proceed to her port of destination, and with a real intent to do so, and had dropped down the straits seven or eight miles, and had then been obliged by head winds to come to anchor, but without relinquishing the intention of proceeding on her voyage as soon as wind and weather would permit.

In *Cole* v. *Union Insurance Co.* 12 Gray, 501, 519, a vessel anchored in the open roadstead at the Chincha Islands, for the purpose of taking in cargo, was held not to be " at sea," within the meaning of the first part of the continuation clause. And in *Gookin* v. *New England Insurance Co.* Ib. 501, 506, a vessel was held to have arrived at a " port of destination," under the last part of the clause, upon her arrival at a similar open roadstead at Ypala for a like purpose.

In *Wales* v. *China Insurance Co.* 8 Allen, 380, it was held that a vessel which was chartered to one port, there to receive orders which should indicate to her within twenty-four hours whether to discharge there or go on to another port, and to be kept at the first port as long, and sent to such other port, as those from whom she was to take her orders might elect; and which did not, within twenty-four hours after giving notice of her arrival at the first port, receive orders to go to another port; had arrived at a port of destination, within the meaning of the last part of the continuation clause. There is no intimation in the opinion that the vessel could be considered as " at sea" or " on a passage," or as not having arrived at her port of destination, for any longer period than while the port which she entered might be considered as a port into which she had put for orders only.

The case at bar is less consistent with a continuation of the risk than either of these.    At the expiration of the year, the vessel was not in an open roadstead, but in a safe harbor, into which she had put voluntarily, not for orders merely, but to obtain the necessary clearance, water and crew for her further voyage, with none of which had she been previously supplied.    The necessary conclusion is that she was not " on a passage."    The policy therefore ended with the year, and the insurers are not entitled to an additional premium.

*Judgment for the defendant.*