THE WEIR PLOW COMPANY, *Plaintiff in Error*, v. PORTER.

**Contract, Construction of**: BAILMENT. The Weir Plow Company made an agreement in writing with H., by the terms of which it was to manufacture and furnish to him certain farming implements; it also agreeing not to sell such implements to any one else in a designated county for the year 1876. H. was to sell the implements at a certain price, and to have a certain fee or commission for every sale; was required, when he sold on credit, to take notes of a particular character payable to the company, to which notes he was to add his own guaranty of payment: was to keep the notes of the company and business separate, and to remit the cash received by him each month for each implement sold for cash, and to hold himself ready for settlement by the 1st of July, 1876, or any time thereafter, when called upon by the company. It was further provided that if H. failed or neglected to sell all the implements so delivered to him, he was to settle for those remaining on hand by paying for them in notes, or to store them subject to the order of the company, whichever method of disposition the company might choose to accept, the whole agency being subject to revocation upon the failure of said H. to discharge his duties. *Held*, that the unsold implements did not vest in H., and that the contract as to them was one of bailment and not of sale, unless the company chose to make him vendee upon his offering his paper for their price, and did not choose to order the implements on storage for the future disposition of the company.

*Appeal from Putnam Circuit Court.*—HON. ANDREW ELLISON, Judge.

REVERSED.

*A. W. Mullins* for plaintiff in error.

The trial court erred in excluding part of the deposi_

tion of William B. Boyd offered by plaintiff. Story on
Sales, § 400 ; *Ober v. Carson*, 62 Mo. 209. The contract
constituted Harper the agent of plaintiff to sell the goods
furnished under it. If there was a sale at all, it was in-
complete and conditional that payment in a certain way
would be offered and excepted, with the option remaining
to plaintiff, to take back the goods and decline the sale.
And as the payment was neither made nor offered to be
made the title to the property never vested in Harper &
Moore. Story on Sales, (3 Ed.) § 313 and note 2 ; Hilliard
on Sales, (3 Ed.) p. 33 ; *Griffin v. Pugh*, 44 Mo. 326 ; *Little
v. Page*, 44 Mo. 412 ; *Ridgway v. Kennedy*, 52 Mo. 24 ; *Sum-
ner v. Cottey*, 71 Mo. 121 ; *Couse v. Fregent*, 11 Mich. 65 ;
*Brewster v. Baker*, 20 Barb. 364 ; *Marston v. Baldwin*, 17
Mass. 606 ; *Buckmaster v. Smith*, 22 Vt. 203 ; *Hotchkiss v.
Hunt*, 49 Me 213.

*Smith & Krauthoff* with *H. D. Marshall* for defendant
in error.

The transaction had all the elements of a sale. *Fish
v. Benedict*, 74 N. Y. 613 ; Benjamin on Sales, (3 Am. Ed.)
2 ; *Gardner v. Lane*, 12 Allen 39 ; 2 Schouler Per. Prop.,
186, 190, 229. *Warder v. Hoover*, 51 Ia. 491 ; *Blow v. Spear*,
43 Mo. 406 ; *Audenreid v. Randall*, 3 Cliff. 99, 103 ; *Mahler
v. Schloss*, 7 Daly 291 ; *Marsh v. McPherson*, 105 U. S. 709 ;
*McArthur v. Wilder*, 3 Barb. 66 ; *March v. Wright*, 46 Ill. 487.
The court correctly instructed the jury upon the question
of a re-sale to the plaintiff. R. S., § 2505 ; *Wright v. Mc-
Cormick*, 67 Mo. 426 ; *Stern v. Henley*, 68 Mo. 262 ; *Mills v.
Thompson*, 72 Mo. 367. The contract between the parties
was in writing, and it was not competent for witness Boyd
to vary its terms by parol. *Rodney v. Wilson*, 67 Mo. 123 ;
*Jones v. Shaw*, 67 Mo. 667 ; *Chrisman v. Hodges*, 75 Mo. 413 ;
*Foster v. Ropes*, 111 Mass. 20 ; *Tingham v. Eggleston*, 27
Mich. 326.

MARTIN, C.—This was an action of replevin for fifteen turning plows and two sulky rakes of the Weir manufacture, valued at $328. The property was originally manufactured and delivered to one S. A. Harper, under the following contract, which in its terms included beam cultivators and rakes, but which was by a list attached thereto, extended to the plows claimed in the petition:

"This article of agreement made this 7th day of December, 1875, by and between the said Weir Plow Company * * of the first part, and S. A. Harper * * of the second part, witnesseth: That the Weir Plow Company agrees to manufacture and furnish to the party of the second part, aboard the cars at Monmouth, Ill., on or before the 20th day of February, 1876, twenty-four wood beam cultivators, etc. Party of the first part further agrees to sell the above named implements to no other than the party of the second part, during the year 1876, in the following territory, viz: Putnam county, Missouri. The party of the first part further agrees to pay the party of the second part $6.40 for selling each wood or iron beam cultivator, etc. Provided, each implement is sold at respective list prices before mentioned. All notes taken for the sale of the above implements to be made payable to Weir Plow Company, or order, bearing interest, from June 1st, 1876, or from date, at the rate of ten per cent. * * And provided further, that the party of the second part take no notes without their being signed by a resident land owner, or good and sufficient security, and guarantee their payment by indorsing them, waiving demand, notice of protest and non-payment. * * Said party of the second part agrees to sell the aforesaid number of implements as above stipulated, to keep all moneys and notes separate and apart from individual or company business, and to remit cash due each month for each implement sold for cash, to Weir Plow Company, at Monmouth, Illinois, and be ready to settle with the party of the first part by the 1st of July

next, or at any time thereafter, when the party of the first part or their authorized agent may call upon the said party of the second part.   *   *   The said party of the second part (Harper) agrees to represent each implement sold for cash, by the cash, at wholesale price, and each implement sold for note by note, at retail price, and indorsed as above stipulated, such notes as the party of the first part may designate sufficient in amount to pay for all implements not paid for cash, counting $22.75 for each wood beam cultivator, etc. The said party of the second part further agrees that should he neglect or fail to sell all of said implements by the 1st day July, 1876, to settle for those remaining on hand by giving his note, payable to the Weir Plow Company, or order, due November 1st, 1876, or indorse and turn over farmers' notes as provided for payment of implements sold on time, as the party of the first part may elect; said notes to bear interest at ten per cent from maturity, or, if the party of the first part should so elect, to store and keep well housed, free of charge, implements unsold, subject to the order of the party of the first part.

The party of the first part reserves the right to revoke this agency and take possession of said implements and the proceeds of those sold, at any time the said party of the second part fails to discharge his duties as agent.

In testimony whereof the parties set their hands, day and date first above mentioned.

> J. A. TEMPLETON, for
> WEIR PLOW COMPANY,
> S. A. HARPER.

The property thus delivered to Harper was attached by the defendant, as sheriff, under a writ of attachment against said Harper and W. G. Moore his partner, and in favor of Morrison and Morrison, their creditors.   The only issue in the case relates to the right of property at the time of the levy.

John A. Templeton, in a deposition read in evidence,

testified that he was traveling agent for the plaintiff in 1875 and 1876, and until June, 1877. That in December, 1875, he made a contract, as such agent, with S. A. Harper, under which the property in question was delivered to said Harper and went into the possession of Harper and Moore. A copy of said contract is annexed to the deposition. Deponent further stated: "My impression is, there was a settlement on the back of the contract, marked exhibit "B," made sometime in the month of August, 1876. I can't say the exact day. I think in the first of the month. That settlement was made by myself and Harper, at Unionville, Missouri. At this settlement I invoiced as the goods belonging to the Weir Plow Company, two sulky rakes," and the plows in question, naming them. "These goods, when turned over to me were left in the possession of Mr. Harper, subject to the order of the Weir Plow Company. I next saw the goods in Mr. Marshall's barn where they had been placed by the sheriff, G. W. Porter, defendant."

W. G. Moore, a witness for plaintiff testified: "I formed a co-partnership with S. A. Harper in the spring of 1876, I think in the month of March. We were engaged in the sale of agricultural inplements, and had a light stock of hardware, at Unionville, Mo. For all goods sold by us on time, of the manufacture of the Weir Plow Company, notes were made payable to the company. We received some of the notes for our commission for selling the goods. All notes were taken in the name of the company, and those we received for our commission were indorsed to us by the company. Most of the goods were sold on time. * * There was a settlement made with the company sometime in August, 1876, at which they agreed to take back all goods remaining on hand unsold. After that we held them subject to the order of the company. * * The house in which the goods were at the time of the levy, was in the possession of James Turner, our assignee. I notified the sheriff at

the time he went to make the levy, that the goods of the Weir Plow Company make were not ours and never had been."

H. D. Marshall on behalf of defendant testified: "Harper sold the goods as his own, used them as such and was universally understood to be the owner. The Plow Company was not known in any regard as the owner. The goods claimed by the Weir Plow Company were mixed promiscuously with other goods of Harper & Moore in the building when attached, and in the hands of Turner, their assignee. They were never separated."

This was in substance all the evidence bearing upon the issue. The court, after giving several instructions on behalf of plaintiff, refused the following one:

"That if they believe from the evidence that the copy of the contract, read in evidence, was a true copy of the original contract between S. A. Harper and the Weir Plow Company, and that the goods in controversy in this suit were delivered to S. A. Harper and Moore under said contract, then said goods were held by Harper & Moore on commission, as agents of the Weir Plow Company, and they, Harper & Moore, were not the owners of said goods unless the Weir Plow Company, at the settlement made as provided for in said contract, elected to take farmers' notes, or the notes of Harper & Moore for said goods remaining on hands after said settlement."

At the instance of defendant, the court gave the following instruction: "That by the terms of the contract read in evidence, there was a sale of goods as between Harper & Moore, and the Weir Plow Company. If the jury believe from the evidence that said Harper & Moore took the plows under the same terms as those expressed in said contract, then said Harper & Moore were the owners of the same, and the finding of the jury should be for the defendant, unless the jury further believe from the evidence that after a settlement between the said Harper & Moore and the Weir Plow Company, the said company elected to

take back the plows, and the said Harper & Moore did store and keep the same housed for said plaintiff.

After the jury had retired they returned and reported that they could not agree, whereupon the court of its own motion added the following instruction: " The jury are further instructed that if they believe from the evidence the plows of the Weir Plow Company make were not separated from the balance of the stock after the alleged settlement between Harper & Moore and the said Company, but were left there in the same place, along with the other goods, then there was no sale back to the plow company. The jury then returned a verdict for the defendant, from which the plaintiff prosecutes his writ of error.

The material question for us to consider is, whether the instrument under which the implements were delivered is a contract of sale or a contract of bailment for purposes of sale. The court in its instructions construed the instrument as a contract of sale, by which the title to the implements passed to Harper upon delivery of them to him. If the title thus became vested in him, it may be admitted that under the evidence there was no valid resale, for the reason that there was no change of possession necessary to effect a transfer of title, as against creditors. After considering the language and evident intent of the instrument, I am constrained to disagree with the learned judge in his interpretation of it. I fail to discover in it the elements of either an absolute or conditional sale.

It is true that the plaintiff, according to the terms of the instrument, agreed to manufacture and furnish to Mr. Harper the implements covered by it, and not to sell them to any one else in Putnam county. This language of itself could not constitute a sale to Harper, in the absence of appropriate subsequent provisions to that effect. Now it happens, that all the subsequent provisions negative the inference of a sale to Harper, and constitute him a bailee or agent for the purpose of selling the implements to others, and accounting for the proceeds upon a commission at a

fixed sum for every implement sold by him.  He is to sell
at a certain price and have a certain fee or commission for
every sale.  He is required when he sells on credit to take
notes of a particular character in return, payable to the com-
pany; to which notes he is to add his guaranty of payment.
There is nothing unusual in thus requiring a factor or agent
to guarantee his sales when made by him on credit.  Such
a requirement does not convert him into a vendee, as was
done by the construction adopted by the court.  Harper
agrees on his part to make sales for the company, to keep
their notes and business separate, and to remit the cash re-
ceived by him each month for each implement sold for cash,
and to hold himself ready for settlement by the first of
July, 1876, or any time thereafter when called upon by the
company.

It is further provided that if he fail or neglect to sell
all the implements so delivered to him, he is to settle for
those remaining on hand by paying for them in notes, or to
store them subject to the order of the company, which-
ever of these two methods of disposition the company may
choose to accept.  The whole bailment or agency is subject
to revocation upon failure of said Harper to discharge his
duties as agent.  I am unable to perceive how Mr. Harper,
or his partner, can claim any right of property in the im-
plements as against the company, under this contract and
the evidence in the record.  According to the obvious
intent of the contract, the unsold implements did not vest
in Harper and his partner unless the company should
choose to make them vendees upon their offering their pa-
per for the price thereof, and should not choose to order the
implements on storage for the future disposition of the
company.

Under the evidence the agents did not furnish their
notes for the unsold implements, nor were they, or any-
thing equivalent thereto, accepted by the company in con-
sideration for a sale of them.  On the contrary the property
unsold was retained on storage for the company; and the

assignee of the agents neither had or made any claim for it, as passing to him under a general assignment, which could legally pass nothing belonging to the company. There was not even a conditional sale of the unsold implements, because there was no condition within the possible power of Harper to perform which would give him the title. Any title to be acquired by him depended upon the election of the vendor whether it would make him a vendee, by accepting his paper for the purchase money, or decline doing this and order the goods to be retained on storage for the use of the company.

For the foregoing reasons, I am persuaded that the court erred in refusing the instructions asked by plaintiff, and in giving the instruction of its own motion to the effect that the instrument in evidence constituted a sale.

The judgment is reversed and the cause remanded. All concur.