## Middleton *versus* Stone.

1. Where the plaintiff brings an action of covenant upon a written contract under seal and files his *narr* containing counts which are incongruous and inconsistent with each other, and on the trial he offers his contract alone, as his only evidence, upon motion by the defendant he should be nonsuited.

2. Under a *narr* setting out three distinct and independent kinds of liability, inconsistent with each other, the plea of covenants performed with leave could not of itself admit the defendant's liability.

3. Where the foundation of the plaintiff's claim is a written instrument, it is the duty of the court to declare its meaning.

4. A. delivered to B. two colts, under a contract that B. should safely keep and sell them, if possible, for A., he fixing a minimum price, before a certain date, and if not, to return them in good condition. *Held* that this was not a sale, but a bailment.

5. It was error, therefore, to overrule the offer of B. to show that the colts were sick when they were delivered to him; that when he discovered this he offered to return them to A., who refused to receive them; that while under the treatment of A.'s veterinary surgeon one of them died, and that he then offered to return the other to A., who refused to receive it.

January 26th, 1886.  Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas, No. 3, of *Philadelphia county:*   Of July Term, 1884, No. 65.

This was an action of covenant brought by Lewis P. Stone against Charles H. Middleton, October 28th, 1881, on a written contract under seal hereinafter set out.   The first *narr* was filed on December 15th, 1881, to which defendant pleaded *non est factum*, covenant performed, covenants performed *absque hoc.*

An amended *narr* was filed April 8th, 1882; all defendant's pleas to the first *narr* were then withdrawn.

The amended declaration was upon said contract.   It contained five counts which sufficiently appear in the opinion of the Supreme Court.

To this amended *narr* defendant pleaded covenants performed, with leave, etc., and gave the following notice of special matter:

"DEAR SIR:—Please notice that under above plea, defendant will offer evidence to show that at the time of the delivery of said mares they were sick and in bad condition—that defendant afterwards tendered said mares to said plaintiff, who refused to receive them—that said tender was prior to October 10th, 1881; that after the delivery of said mares to defendant they at once showed their sickness; that defendant sent for plaintiff and requested him to take said mares, but he declined, and asked that they be left at the stable of J. Y. Huber, where they were under said defendant's orders; that plaintiff employed a physician in July, 1881, to attend said mares; that about six weeks after said physician began to attend said mares, one of them died, and defendant again, prior to October 10th, 1881, tendered the other mare to said plaintiff, who again declined to receive it.

"Respectfully,

"E. COOPER SHAPLEY,

"Defendant's Attorney.

"CHAS. P. SHERMAN, ESQ.,

"Plaintiff's Attorney."

When the case was called for trial, and the jury had been sworn, the plaintiff refused to offer any evidence, claiming that under his plea the defendant must first put in his case.

[Middleton v. Stone.]

The following agreement upon which the plaintiff had specially declared was then read by the defendant.

PHILADA., July 9, 1881.

" This Agreement Witnesseth. That L. P. Stone party of the first part. does hereby- gree to sell to C. H. Middleton. party of the second part.

Two Bay Mares. sisters. foals of 1876 and 1877 upon the following conditions. Said Stone delivers to said Middleton the cots. To be kept in good. and thriving condition. handled in a careful and horsemanlike manner. and sold at said Middleton's pleasure. without any expense to said Stone. Upon the sale of said colts. said Middleton promises to pay to the said Stone Two hundred and fifty (250) dollars and one-half of all monies received. as price of Colts. above the amount named ($250). not to exceed in any event. Twenty-five (25) dollars. additional. or at any time the Colts shall be the exclusive property of said Middleton. upon the payment of Two hundred and seventy-five (275) dollars. by said Middleton. or his agent. to the said Stone.

" It is further agreed. That if said Middleton cannot sell the' said Colts. on or before October 10 1881. he shall deliver the Colts to said Stone in good. condition. without charges of keeping. handling. or any claim whatsoever.

" Witness

C. H. MIDDLETON, [L. S.]
L. P. STONE, [L. S.]"

After reading this to the court and jury he made the three following offers, each one of which was objected to, the objection to each of which was sustained and an exception on the overruling of each offer sealed for defendant.

I. " Defendant offers to show that when the mares were delivered to him under his agreement with plaintiff they were sick, and that defendant did not know it until he got them to his stable; that he placed them in Huber's stable, it being a superior stable, and sent for plaintiff, who came, to whom Huber, acting for Middleton, offered to return the mares; that Stone declined to receive them; that Stone then sent his own veterinary surgeon to take charge of the mares at Huber's stable; that while the mares were in charge of plaintiff's veterinary surgeon one of them died, and that Huber offered to return the other, which plaintiff declined, all of which was prior to October 10th, 1881." (First assignment of error.)

II. " Defendant offers to show that at the time of entering into this agreement the plaintiff proposed to defendant that he should take the mares for the purpose of sale, and if sold should account to plaintiff for at least $250, and for one half in excess

thereof up to $25; that plaintiff said that he would make this memorandum simply to show what he would get in the matter and that in pursuance of that arrangement this agreement was made at the time; that in pursuance of that verbal arrangement the mares were delivered to defendant, and that they were sick from a disease that could not be discovered by ordinary examination, and that plaintiff knew of that disease in the mares at the time of the delivery to Middleton, and that Middleton did not know it, and that one of them died of that disease prior to October 10th, 1881." (Second assignment of error.)

III. "Defendant offers to show that under a verbal agreement these mares were sent to Middleton on consignment, not to be paid for unless sold or kept by Middleton after October 10th, 1881, and that this memorandum was written entirely by Stone, and signed by Middleton under the assurance and understanding that it contained the verbal agreement, and that the horses would be received back if not sold before October 10th, 1881, but if sold Middleton was to pay $250 and one half of any amount received in excess up to $25. (Third assignment of error.)

After the offers were rejected, defendant moved to amend the record by filing a special plea, this motion was refused and a verdict directed for the plaintiff. (Fourth assignment of error.)

Verdict for the plaintiff in the sum of $281.25, and judgment thereon. The defendant thereupon took this writ assigning for error the refusal of his offers as above set out and the instruction of the court to the jury to find for the plaintiff.

*E. Cooper Shapley,* for plaintiff in error.—The agreement is practically a bailment. What advantage could he have gained by adding *absque hoc* or pleading specially? The addition of *absque hoc* would only have put the plaintiff to proof of delivery of horses to defendant: Stewart *v.* Bedell, 29 Sm., 336; Smith *v.* Frazier, 3 Sm., 226; Turnpike Co. *v.* McCullough, 1 C., 303; Martin *v.* Hammon, 8 Barr, 270.

It would not require him to show more than a delivery of possession of the property he had agreed to sell: Hite *v.* Kier, 2 Wr., 72.

As the plea of "covenants performed" admits plaintiff's performance (Zents *v.* Legnard, 20 Sm., 192), and as the only thing to be performed by plaintiff was the delivery of the horses to defendant, which fact was admitted, it was just as proper to plead without *absque hoc* as with it, and the same evidence on the part of the defendant would be admissible.

[Middleton v. Stone.]

Nor would a special plea have been any advantage. The plea as filed with notice was equal to a special plea: 2 Tr. and Haley, S. 1533; Bender v. Fromberger, 4 Dall., 439.

But admitting the delivery by plaintiff that did not make out sufficient to entitle him to a verdict. The burden of proof was upon him to show,

1. That there had been a sale by Middleton, or,

2. That Middleton could not, or did not, sell the colts before October 10th, 1881, so as to make Middleton liable for the amount.

Because while the plea was affirmative it was pregnant with a negative, and cast the proof of the breach on the plaintiff: Stewart v. Bedell, 29 Sm., 336.

The case of Haak v. Linderman, 14 Sm., 499; Welsh v. Bell, 8 C., 13; Waldron v. Haupt, 2 Sm., 408; Jenkins v. Eichelberger, 4 W., 21; Pritchett v. Cook, 12 Sm., 193; Martin v. Mathiot, 14 S. & R., 214; Clow v. Woods, 5 S. & R., 286, and Farrell v. Nathans, 1 Phila., 557, are all cases as to creditors of the vendee.

*Charles P. Sherman*, for defendant in error.—The contract was a *conditional sale*, and not a bailment, the title to the horses vesting immediately in Middleton, liable to be divested upon their return by him to Stone in good condition, on or before October 10th, 1881; and they could have been levied upon by Middleton's creditors: Haak v. Linderman, 14 P. F. S., 499; Waldron v. Haupt, 2 Id., 408; Martin v. Mathiot, 14 S. & R., 214; Farrel v. Nathans, 1 Phila., 557; Prichett v. Cook, 12 P. F. S., 193; Jenkins v. Eichelberger, 4 Watts, 121.

The plea of " covenants performed with leave, etc," admits that the plaintiff has *entirely* performed his agreement: Zents v. Legnard, 20 P. F. S., 192.

Neither can be set up unsoundness.

For upon the sale of a horse, without fraud or warranty, unsoundness is no defence to an action for the purchase money: Pulhamus v. Purcel, 2 Clark, 141; Kerr v. Shrader, 1 W. N. C., 33; Patteiger v. Hamilton, Id., 301; Egan v. Call, 10 Casey, 236.

Neither can be set up warranty.

For a naked affirmation by the vendor does not amount to a warranty: Benhead v. Scott, 1 Philada., 84; Wetherill v. Neilson, 8 Harris, 448; Simons v. Rosenthal, 1 W. N. C., 150; Bailey v. Waterhouse, 3 Id., 275.

Nor do mere representations as to the quality of the articles sold constitute a warranty: Wetherill v. Neilson, *supra;* Whitaker v. Eastwick, 25 P. F. S., 229; Broderick v. McHenry, 1 W. N. C., 446; Sims v. Stribler, 13 Id., 92; Boyd v. Wilson, 2 Norris, 319. The alleged fraud must be distinctly charged: M'Crelish v. Churchman, 4 Rawle, 26.

38

[Middleton *v.* Stone.]

And there is *no charge of fraud* in his notice of special matter. (In point of fact there was no fraud.)

Under his plea of "covenants performed with leave, etc." the affirmative of the issue was thrown upon the defendant, and he was consequently obliged to "begin the evidence and conclude to the jury": Norris *v.* The Insurance Co., 3 Yeates, 84; Zents *v.* Legnard, *supra;* Richards *v.* Nixon, 8 Harris, 19; Gebhart *v.* Francis, 8 Casey, 78; Abbott *v.* Lyon, 4 W. & S., 38.

Mr. Justice GREEN delivered the opinion of the court March 1st, 1886.

The plaintiff in his amended *narr* declared upon the contract in suit in three different ways. In the first count he declares upon an absolute sale of two mares for the specific sum of $250, and charges as a breach the non-payment of that sum. In the second count he declares upon a conditional sale of the mares for a sum of $250, and for the one half of such additional sum, not exceeding $25 as such one half, as the defendant might sell the mares for, providing he sold them before October 10th, 1881, and if not by that time sold then to pay the plaintiff $250 for them; and charges as a breach that the defendant did sell them for $300, but did not pay the plaintiff the $275 to which he was entitled under the agreement. The third count declares upon a contract of bailment that defendant agreed to keep the mares in good and thriving condition, and to handle them in a careful and horsemanlike manner, and to sell them for the plaintiff, and upon the sale to pay the plaintiff $250; and if not sold by October 10th, 1881, to deliver them to the plaintiff in good and thriving condition without charge for keeping them. The breach alleged is that defendant sold the mares and became liable to pay the $250, but did not. The fourth count charges the same bailment upon a contract to sell the mares and to pay the plaintiff $250 and one half of whatever was received above $250, not exceeding the sum of $25 additional, and if not sold before October 10th, 1881, to deliver the mares in good condition to the plaintiff. The breach charged is the sale of the mares for $300, and an obligation to pay the plaintiff $275, which was not paid. The fifth count charges a bailment to keep the mares in good condition, etc., as alleged in the two previous counts, and upon the sale thereof by the defendant to pay the plaintiff $250 and one half of all money received for them, not exceeding $25 additional, and if defendant could not sell them before October 10th, 1881, he was to deliver them to the plaintiff in good condition without charge for their keeping. The breach alleged is that the defendant did not sell the mares and did not return them.

It will be perceived at once that the *narr* is incongruous

[Middleton v. Stone.]

and inconsistent with itself in treating the only agreement there was between the parties as three distinct and independent species of contract which necessarily conferred different rights and imposed different obligations upon the parties. If this contract, which was in writing and under seal, was an absolute sale for $250 by the plaintiff to the defendant, it certainly could not be a conditional sale for $250 plus the one half of another sum, which was to be determined, not by the original sale, but by another and future sale to be subsequently made by the defendant to some third person. Nor if it was either of the preceding kinds of sale could it be a mere bailment for keeping and a possible sale for $250, which was never made, and thereupon an obligation to return the mares to the plaintiff. The contract had *some* legal meaning, and it was the business of the plaintiff to declare upon it as having such meaning in order that his pleading should be consistent. To us it is entirely clear that in no point of view can it be regarded as an absolute sale. The very fact that the defendant was obliged to return the mares if they were not sold by him by October 10th, and that he had only an option to keep them by paying $275 for them, which option could not become an obligation until exercised, precludes the possibility of the contract being considered an absolute sale for $250. It could not become a sale at $275, unless the defendant subsequently to the making of the contract, and as a matter of fact independently of it, declared his determination to take them at that price and paid the money, and this it is neither alleged in the *narr* nor proved by testimony that he ever did. In no part of the contract does the plaintiff agree to sell them to the defendant or to any one for $250. The only other event in which the defendant was obliged to pay any money at all for the mares was the event that he should sell them before October 10th, 1881, for a sum exceeding $250. It is manifest therefore that before any obligation of the defendant could be established under this contract it must be established by proof either, first, that he sold them after July 9th and before October 10th, 1881, for a price exceeding $250; or, second, that he determined to take them himself at $275; or, third, that he had not sold them at all by October 10th, and therefore became liable to return them. It is perfectly clear therefore that, when the plaintiff on the trial merely read his contract and rested, he should have been nonsuited if such an application had been made. It does not appear, however, that a nonsuit was asked for. Instead of that the defendant made his first offer of proof in regard to the condition of the mares when he received them, and what was done with them subsequently, and that one of them died while they were in charge

of the plaintiff's veterinary surgeon before October 10th. This offer was rejected, but for what reason does not appear, nor can we imagine. If it was upon the theory that the contract was an absolute sale, and there was no warranty of quality, that theory was unsound, because, as we have seen, it was in no sense an absolute sale. If it was a conditional sale or a bailment there was no liability of the defendant without proof that the conditions had transpired which established either of those relations. The plea of covenants performed with leave could not of itself admit the defendant's liability under this *narr*, because the *narr* was a mere drag-net, setting out three distinct and independent kinds of liability quite inconsistent with each other. The foundation of all liability being a written instrument, it was for the court to declare its meaning, and its meaning could not be an absolute sale. Regarded in any other aspect there was no other liability without proof of additional facts by the plaintiff, and no such proof was given.

We are inclined to regard the contract as a bailment for safe keeping, for sale if possible at a price larger than $250, and for return in good condition if not sold. There was no provision for a change of title from the plaintiff to the defendant, except in the one case that the defendant should pay $275 for the mares. In that event—that is, actual payment of the money, they should be his " exclusive property." There is no allegation in the *narr*, and, of course, no proof, that the defendant ever paid the $275, or declared that he would, and hence he could not possibly acquire the title in himself under this contract. The other alternative of a money payment was not upon a sale *to* the defendant, but upon a sale *by* the defendant to a stranger, and in that event the amount to be paid depended upon the amount for which the defendant sold them. Such sale, of course, would be for account of the plaintiff. This part of the contract is undoubtedly a bailment for sale. The stipulation for re-delivery in case of no sale makes that aspect of the contract a bailment.

There being neither allegation nor proof of an acceptance by defendant at $275, that part of the contract becomes immaterial; but even as to that, the question at issue being between the original parties only, no creditors being interested, the title could not pass without the actual payment of the money, and hence this part of the contract cannot convert the whole into a sale.

In Chamberlain *v.* Smith, 8 Wr., 431, the contract was in the following words : " January 12th, 1858. Received of John Benson one pair of three year old past stags, to keep and work in a reasonable, farmer-like manner for the term of one year : said cattle to be returned in one year. But the said Mc-

[Philadelphia Iron and Steel Co. *v.* Davis.]

Whartee has the privilege, by paying $40 and legal interest at the expiration of the year, to keep the said cattle." The court below held this to be a sale, but we reversed the judgment, saying (STRONG, J.): "We do not so construe the contract. It was a bailment, not a sale; a bailment with a refusal of the cattle for a stipulated time."

The same doctrine was applied in Becker *v.* Smith, 9 P. F. S., 469. An exhaustive note at section 4 of 1 Benj. on Sales discusses the distinction between conditional sales and bailments very fully, and gives instances similar in character to the above, but too numerous to be repeated here. It is unnecessary to extend the discussion. The first rejected offer of testimony by the defendant should have been received. We see no occasion to receive the others, as they were offers of parol proof touching the contract, when the contract itself was in writing. Under the plea of covenants performed with leave the first offer was clearly admissible, even on the technical state of the pleadings: Tr. & Hal. Pract., sec. 1533. It follows that the learned court below was in error in directing a verdict for the plaintiff, as there was no sufficient evidence to sustain such a verdict. The first and fourth assignments of error are sustained.

Judgment reversed, and *venire de novo* awarded.