# CHARLESTON.

BARNES SAFE AND LOCK CO. v. BLOCH BROS. TOBACCO CO.

Submitted June 8, 1893.—Decided November 4, 1893.

1. PRINCIPAL AND AGENT—SALE.

If a contract of agency is entered into, and the principal agrees to furnish to the agent on consignment certain manufactured articles at a stipulated price, to be paid for when sold, such articles, when so furnished, remain the property of the principal until sold to a *bona fide* purchaser; and they can not be executed and sold to pay the debts of the agent; and, if so sold, the purchaser gets no title to any such articles, as against such principal.

2. PRINCIPAL AND AGENT—LIEN.

The agent's right to a lien for commission and expenditures is one personal to himself, not transferable, and he alone has the right to take advantage of it.

Statement of the case by DENT, JUDGE:

On the 21st day of April, 1890, the Barnes Safe & Lock Company entered into a written contract of agency with the Globe Contract Company as follows, to wit:

"Articles of agreement between the Barnes Safe & Lock Company, of Pittsburgh, Pa., composed of Thomas Barnes of the first part, and the Globe Contract Company of Wheeling, W. Va., a corporation of the State of West Virginia, of the second part, witnesseth, that, for and in consideration of the party of the second part assuming the agency for the manufactures of the party of the first part in the territory hereinafter mentioned, the party of the first part hereby agrees that the party of the second part shall have the privilege of selling their fire and burglar proof safes, vault doors, *etc.*, in the city of Wheeling, W. Va.; also throughout the State of West Virginia; also in Green, Fayette and Washington counties in the State of Pennsylvania; and also in Belmont, Jefferson and Columbiana counties, in the state of Ohio—the state of West Va. and Belmont, Jefferson and Columbiana counties, Ohio, to be con-

sidered as exclusive territory of the party of the second part, but Green, Fayette and Washington counties, in the state of Pennsylvania, to be considered as open territory; and the party of the first part shall credit the party of the second part with the regular discounts as hereinafter set forth upon all work shipped into the exclusive territory before mentioned during the continuance of this agreement, whether the orders therefor shall come through the party of the second part or otherwise. The party of the first part further agrees that on all safes or other work sold by the party of the first part from the date hereof to the Westinghouse interests of Pittsburgh, Pa., the party of the second part is to be credited with one half the amount received over the discounts hereinafter set forth, less the costs of delivering the safes on upper floors, no charge to be made party of the second part by party of the first part on safes delivered to the Westinghouse interests on the ground floors in Pittsburgh only. The party of the first part grants to the party of the second part the following discounts from their regular price list, copy of which is hereto attached and made part hereof, viz: From the prices mentioned in pages nine, eleven and thirteen, seventy per cent., and fifteen per cent. off, and the same discounts from any other prices named in said price list, except that the burglar-proof part of any combination, fire, and burglar proof safes shall be calculated at ten cents per pound of actual weight, and except, further, that four tumbler iron case locks for burglar proof work shall be charged for extra, at twelve dollars each; four tumbler brass case locks for burglar proof work shall be charged for extra, at fourteen dollars each; and end gear burglar-proof locks shall also be charged for extra. The party of the first part further agrees to furnish the party of the second part with a stock of safes on consignment, said safes to be paid for to the party of the first part when sold by party of the second part, and all safes, *etc.*, sold direct by party of the second part, to be paid for to party of the first part in thirty days, by New York draft. The party of the first part also agrees to paint the name, 'The Globe Contract Co., Genl. Agts., Wheeling, W. Va.,' beneath their own name, 'The Barnes Safe & Lock Co.,'

on all safes and other work shipped under this agreement into the territory of the party of the second part. It is understood that all prices given in price list are f. o. b. cars at Pittsburgh, Pa. In consideration of the foregoing, the party of the second part hereby agrees to assume the agency for the manufactures of the party of the first part in the territory herein named, and agrees to work said territory with diligence during the continuance of this agreement. This agreement may be terminated by either party's giving to the other thirty days' written notice of their intention of so doing, and at the end of thirty days this agreement shall be considered as canceled. In witness whereof, the said parties have hereunto attached their hands and seals, this —— day of ——, 1890; the terms of this agreement, however, to have effect as if agreement were dated April 21st, 1890.

"BARNES SAFE & LOCK CO.,   [Seal.]

"THOMAS BARNES,

"Witness: JOHN H. NEWELL.

"Attest:        JOHN M. SWEENEY, Secy.

"Globe Contract Co.

"W. D. UPDEGRAFF, Prest.

"F. R. STEWART, Genl. Mgr."

This agency was continued until the 3rd day of November, 1890, when the Barnes Safe & Lock Company sent the Globe Contract Company the following notice of the cancellation of the agency, to wit:

"Barnes Safe & Lock Company (Successors to Thomas Barnes & Burke & Barnes) Manufacturers of Improved Fire and Burglar Proof Safes, Vault Doors, and Bank Locks. 124, 126, 127, 129 and 131, Third Ave., between Wood and Smithfield Streets.

"(Dictated.)           Pittsburg, Pa., Nov. 3rd, 1890.

"THE GLOBE CONTRACT COMPANY, *Wheeling*, *W. Va.*

"GENTLEMEN:—We hereby notify you in writing, that the contract that exists between us under date of April 21st, 1890, is cancelled according to the terms of the said contract. Please send us statement by return mail of the safes that you now have on hand; also, at the same time, send us N. Y. draft for the safes you have already sold from

those we have sent you from time to time; also please advise us what you intend doing about the safes you have left. We thought, in making this contract with you, that you would be able to do us some good work. We are sorry that this step has to be taken, but under the circumstances, and in justice to our interests in the territory we laid aside for you, we hereby notify you that the said contract is cancelled.

"Yours truly,
"Barnes Safe & Lock Co.
"Jno. H. Newell."

To which the following reply was sent:

"The Globe Contract Company, Wheeling, W. Va. Electrical and Mechanical Engineering and Contracting Plans and Estimates Furnished on Application.

"Wheeling, W. Va., Nov. 7, 1890.

"Barnes Safe & Lock Co, *Pittsburgh, Pa.*

"Gentlemen: Yours of 2rd instant to hand, and contents noted. We will prepare statement of sales and safes on hand, and in the mean time will expect statement from you of work sold in the territory held by us of which we have had no statement as yet, though we have asked for it repeatedly, and, while we have kept an account of such as came to our knowledge, we naturally reason that we have not all of it on our books. Please attend to this at once, and on receipt of same we will submit our statement. As to safes in stock you are the party to decide as to them, since you wish to discontinue the agency. They will be at your disposal at any time after we have adjusted matters as outlined above.

"Very respectfully, *etc.*,
"Globe Contract Co.
"F. R. Stewart, *Gen'l Mgr.*

Thus matters were allowed to rest between them until the 9th day of July, 1891. The safe in controversy being one of the safes consigned to the Glebe Contract Company under the agreement aforesaid, was levied on and sold by an execution-creditor as the property of the Globe Contract Company, and the defendant in error, Bloch Bros. Tobacco Company, became the purchaser thereof. The

purchasers then wrote the following letter to the Barnes Safe & Lock Company :

"THE BLOCH BROS. TOBACCO CO., *Wheeling W. Va.*

"Wheeling, W. Va., July 17, 1891.

"BARNES SAFE & LOCK CO., *Pittsburgh, Pa.:*

"We purchased the other day at constable sale one of your safes that was owned by the Globe Contract Co., which company failed. The safe was never used. It is a burglar chess safe, No. 30,255. We purchased the same to put in our vault, and, upon measuring the same, find it is about 3 inches too wide. The object of this letter is to inquire if we could not exchange this safe for another of such a size that we could get in our vault. An early answer will oblige

"Yours, truly,

"THE BLOCH BROS. TOBACCO CO."

Thereupon the safe company immediately brought an action of detinue for the safe, or the value thereof—two hundred dollars—before Justice George Arkle, who, on the 12th day of October, 1891, rendered judgment for the plaintiff. From this judgment the defendant company appealed to the Circuit Court of Ohio county; and on the 13th day of February, 1892, the Circuit Court, neither party requiring a jury, heard the evidence and gave judgment for the defendant. The plaintiff then applied for and obtained a writ of error bringing the controversy before this Court.

WHITE & ALLEN, for plaintiff in error :

I.—*Where a contract is to receive and sell goods, it is a contract of bailment not of sale.*—105 Mass. 238 ; 82 Mo. 23 ; 2 Ency. Law. 42 ; 27 Pac. Rep. 228 ; 5 Pick. 7 ; 2 Dall. 60.

II.—*Globe Contract Co. a corporation not a trader.*—25 W. Va. 259 ; 101 U. S. 71, 79–83.

III.—*Lien for commission is a personal privilege of agents' or factor, and can not be transferred.*—12 Neb. 68 : 63 Me. 116 ; 22 Vt. 464 ; 139 Mass. 127 ; 42 Me. 197 ; 41 Am. Dec. 379 ; 57 Am. Dec. 522 ; 19 Am. Dec. 303 ; 2 N. H. 321 ; 5 T. R. 606.

W. P. HUBBARD, for defendant in error, cited 43 Mo. 496 ; 3 Barb. 66 ; 25 W. Va. 90, 96 ; 86 Va. 374 ; 53 Ill. 44 ; 7

Cow. 752; 4 Coms. 76, 85; 18 Fed. Rep. 519; 74 Ill. 213; 34 W. Va. 642; 4 Min. Inst. 449; 1 Am. Eng. Ency. Law 428; 12 Am. & Eng. Ency. Law 225, 229; 102 U. S. 235.

DENT, JUDGE:

The counsel for the defendant in error maintains that the judgment of the Circuit Court should be affirmed, because : (1) The safe had been sold by the plaintiff to the Globe Contract Company. (2) If that were not so, and the safe was in the hands of the Globe Contract Company as plaintiff's agents, the latter had a lien for the general balance due them, and the plaintiff not having paid that balance can not recover. (3) The plaintiff stood by and saw the safe sold as property of the Globe Contract Company without making any claim. (4) The Globe Contract Company, a trader, not having complied with the provisions of section 13, c. 100, of the Code, this safe, acquired and used in its business, was liable for its debts. (5) If the contract was as claimed by plaintiff, it was an attempt to sell goods reserving the title, and such reservation is void under section 3, c. 74, of the Code.

On an examination of many decisions relating to contracts of this kind, we find them apparently contradictory and hard to reconcile; some holding that goods delivered under similar contracts are mere bailments for the purpose of sale; others, that they are sales with reservation of title and therefore void under the usual recording acts as to creditors. But from all the general rule is deducible, that the court must determine from the wording of the contract itself and the circumstances surrounding it the true intention of the parties in making it; and if the contract was entered into in the form of an agency contract for the purpose of evading the statute requiring all reservations of title to be recorded, then it should be held void as to creditors. Such was the determination of the court in the case of *Chickering* v. *Bastress*, 130 Ill. 206 (22 N. E. Rep. 542).

But where there is no attempt at evasion, but the contract is one of pure agency, providing for a consignment of goods to be paid for at a fixed price out of the proceeds of the goods when sold, this is a bailment for sale not a sale

with reservation of title, and the title remains in the consignor, until the goods are sold to a *bona fide* purchaser for value. *Walker* v. *Butterick*, 103 Mass. 238; *Plow Co.* v. *Porter*, 82 Mo. 23; *Middleton* v. *Stone*, 111 Pa. St. 589 (4 Atl. 523); *Dando* v. *Foulds*, 105 Pa. St. 74.

"Ordinarily, if goods are 'consigned' for sale, it is a bailment, and not a sale to the consignee. The goods do not become his property or liable for his debts," "even though consigned on a *del credere* commission." And the fact that the goods consigned were invoiced at a stated price does not itself constitute the transaction a sale, unless the terms of the consignment be such as to make the consignee, when the goods are sold, the purchaser and principal debtor for the goods. Benj. Sales (6th Ed.) p. 7; also, 3 Amer. & Eng. Enc. Law, p. 340.

Applying these principles to this case we find, that the contract entered into was one of pure agency without any attempt or thought of evading the statutory law relating to the recordation of instruments, when sales are made reserving the title, but a consignment of safes was made to the Globe Contract Company as such agent, not in any sense a purchaser, to have on hand to sell for the Barnes Safe & Lock Company, whenever a purchaser could be secured on not exceeding thirty days' time. If no sales were made, then there was no purchaser, and the safes could only be returned to the consignor. If a sale was made, the title passed not through the consignee but direct from the consignor to the purchaser; and the price passed through the hands of the consignee to the consignor, after deducting all over a given amount to pay commissions and expenses.

It is true that the consignee could have become the purchaser of any of the safes, at any time it might wish to do so, by accounting for or paying the fixed price according to the contract to the consignor; and, when the consignor gave notice of cancellation, it gave the opportunity to the consignee to become the purchaser of any unsold safes, but this the consignee refused to do, and notified the consignor, that the safes were at its disposal as soon as the accounts between them were properly adjusted.

The consignor may have been guilty of some negligence in not taking steps at once after the cancellation of the contract to recover possession of the safes, but not as to divest it of its title, as it was waiting for the statement from its agent. There is no sufficient evidence to show that it stood by and saw the safe sold as the property of the Globe Contract Company without making claim. On the contrary, the proof clearly shows, that it had no knowledge of the levy or sale until the letter written it by the defendant in this case, informing it of the purchase, and asking to trade it for a safe of a different size.

It is hardly worth while to notice the fourth proposition of defendant's counsel—that the Globe Contract Company was a "trader," within the provisions of section 13, c. 100, of the Code—because the Globe Contract Company did not do business as a trader with the addition of the words "factor," "agent," and "company," or "& Co," within the meaning and contemplation of the statute; but it was doing business in its corporate name, and while transacting other business it undertook to act as an agent for the Barnes Safe & Lock Company which fact was plainly painted on every safe handled by it as such agents.

This being a bailment not a sale with reservation of title, as heretofore determined, does not come under the provisions of section 3, c. 74, of the Code.

To sustain the position taken by the defendant, its counsel quotes the law virtually as set out in syllabus 1, *Chickering* v. *Bastress*, 130 Ill. 206 (22 N. E. Rep. 542): "(1) Contract —Whether a Sale or Mere Bailment. Where the identical thing delivered is to be restored in the same or an altered form, the contract is one of bailment; but when there is no obligation to restore the specific article, and the person receiving it is at liberty to return another thing of equal value, he becomes a debtor to make a return, and the title to the property is changed—it is a sale."

The same law is laid down in Benjamin on Sales (6th Ed. p. 5) in these words: "On the other hand, it is now well settled that if the contract clearly contemplates, either by express provision or by established usage of the business, that the identical thing received will not be returned, but

only its equivalent, either in the same form received, or in some manufactured condition, or else paid for in money, at the option of the receiver, the transaction is a sale or exchange. The title passes immediately on delivery, and the risk is on the receiver."

This law, while it holds good as to certain kinds of bailments, has no application whatever to that class of bailments known as "consignments for sale," and was therefore improperly applied in the Illinois case above referred to. To so apply it is to do away with all bailments with power to sell, because there is no obligation in such case to restore the specific article, but only the value thereof in money, after a sale is made by the factor or consignee, or, in case no sale is made, then to restore the specific article; and the law quoted above from the fifth page of Benjamin on Sales would be directly in conflict with the law quoted from the seventh page of the same work, but to give the construction given in this opinion is to render both pages harmonious.

The only other point urged by the defendant's counsel is the one, on which the Circuit Court appears ·from the briefs, to have decided this case; and that is that the appellant was not entitled to recover possession of the safe in controversy; because the Globe Contract Company had a lien on it for unsettled commissions. It nowhere appears that such is the true state of affairs. Accounts appear to be unsettled, but which way the balance will fall is not made evident. Neither is the Globe Contract Company claiming any such lien. If it had one, it was personal to itself, and was waived when it permitted the safe to be taken from its custody and it can not be asserted by a third party. "None but the factor himself can set up this privilege against the owner. It is a personal privilege, and can not be transferred, nor can the question upon it arise between any but the principal and the factor." 3 Amer. & Eng. Enc. Law, p. 339; *Holly* v. *Huggeford*, 8 Pick. 73.

The constable in this case levied on the safe by direction of the general manager, and apparently the only secured creditor of the Globe Contract Company, then wholly in-

solvent. This is no protection to the officer, nor to the purchaser who bought at the sale, because the doctrine *caveat emptor* applies in such cases with full force, and the inscription on the safe, ' The Barnes Safe & Lock Co.," " The Globe Contract Co., Genl. Agts. Wheeling, W. Va.," was sufficient to put any reasonable man on his guard, especially as it was a new safe that had never been used; and it can hardly be doubted that such shrewd business men as compose the defendant company were fully informed as to the true state of the title to the safe, and purchased it as a matter of pure speculation. If not so informed, it was their own fault, as they knew where to find the owners of the safe. But whether they were or not does not alter the law of this case.

"Persons dealing with factors concerning goods intrusted to them are charged with notice of the extent and limitations upon their powers; and if they deal with them as if they were acting for themselves, or if they were dealing with their own property, such persons do so at their peril that such is the fact, or that the factor has special authority from the owner, or that, by the well-established and recognized usage and customs of trade in that line, the factor is authorized to deal with and dispose of the goods in the manner proposed. If the transaction is brought in question by the owner of the goods, the burden of proving the factor's authority is upon the party dealing with him." *Kauffman* v. *Beasley*, 54 Tex. 563; Story, Ag. § 225.

There is no pretence or claim in this case, that the Globe Contract Company through its general manager was authorized by the Barnes Safe & Lock Company to turn this safe over to the constable to be sold and applied on the debts of the Globe Contract Company, and he in so doing acted wrongfully towards the true owners of the safe and the purchaser at the sale, but could not thereby deprive the true owners of their title nor confer any title on the purchaser, because he was exceeding the authority conferred by the agency.

For the foregoing reasons the judgment of the Circuit Court is reversed; and judgment is rendered for the appellant, the Barnes Safe & Lock Company, for the safe

in question, or, in lieu thereof, the sum of one hundred and twenty five dollars, the agreed value, with interest thereon until paid, and his costs in this and the Circuit Court and before the justice of the peace expended.

# CHARLESTON.

