BARTELDES SEED CO. v. BORDER QUEEN MILL & ELEVATOR CO. *et al.*

No. 1.   Opinion Filed May 12 1909.

(101 Pac. 1130.)

1.   **PRINCIPAL AND AGENT—Construction of Contract—Conditional Sale.** The Border Queen Mill & Elevator Company contracted with H., as local agent, to handle for it flour in and around P., in Kay county, Okla., agreeing to ship said flour on a basis of the "Miller's Association prices" on the same day the same is ordered f. o. b. P.; H. to pay the freight thereon but to be reimbursed therefor on final settlement; it being specially agreed that said flour should remain the property of said principal until sold, and the money received from such sale remitted to the principal; said H. to have said flour insured against loss or damage after it comes into his possession, and to remit to the principal in cash for all flour sold by him on the 15th and 30th days of each and every month during the continuance of said contract, deducting his commissions out of the money received from the sale of the flour, remitting the balance. **Held,** that said contract did not have the effect of a conditional sale, but created the relation of principal and agent.

2.   **CONTRACTS—Restraint of Trade—Evidence—Presumptions of Legality.** It being stipulated in a contract between the principal and agent that the latter should sell the former's flour, as its agent, at the "Millers' Association prices," there being no allegation in the pleadings that said association existed in restraint of trade, or for the purpose of monopolizing products and unlawfully fixing prices, nor any evidence offered tending to show such, such contract on its face does not **prima facie** show that it was in restraint of trade and in contravention of the anti-trust and anti-monopoly laws in force; every presumption being that such prices were lawfully quoted or promulgated. He who seeks to have an act or contract declared unlawful assumes the burden, and in order to prevail must sustain the same by proof.

(Syllabus by the Court.)

*Error from Probate Court, Kay County; R. L. Howsley, Judge.*

Action by the Barteldes Seed Company against the Border Queen Mill & Elevator Company and others. Judgment for defendants, and plaintiff brings error. Affirmed.

On the 9th day of February, 1907, the plaintiff in error, the Barteldes Seed Company, as plaintiff, instituted its action against the defendant in error, A. F. Harness, as defendant, in the probate court of Kay county, Okla., alleging that said defendant was indebted to said plaintiff in the sum of $129.27 for goods, wares, and merchandise, etc., sold and delivered by plaintiff to defendant at his special instance and request, etc., and that the same was past due and unpaid, and that, after demand, defendant had failed and refused to pay the same. On the same day affidavits and bond for attachment were duly made and executed on the part of the plaintiff, and filed in said court, and an attachment writ issued and was levied upon certain flour. Due return of the levy of said writ was made into said court. On the 13th day of March, A. D. 1907, the defendant filed his answer, pleading a failure of consideration, in that the said alleged indebtedness was incurred by the defendant for the purchase price of certain seeds of various kinds; that the plaintiff agreed with the defendant that said seeds were to be sound and good for agricultural purposes, guaranteeing same to that effect, and that if the same did not prove to be sound and fit for agricultural purposes said defendant should not be required to pay for said seeds, but would be permitted to return them to the plaintiff; that said seeds proved to be of no value whatever, and not in accordance with plaintiff's guaranty; that defendant in due and apt time so notified the plaintiff, and offered to return the same to it, which plaintiff refused to permit, and defendant now offers to return the same to plaintiff, and tenders same in open court. On the same day the Border Queen Mill & Elevator Company filed its plea of intervention, claiming the flour levied on under said writ by virtue of a written contract as its property. and on the 16th day of March, A. D. 1907, plaintiff filed answer thereto, denying the allegations of same. On the 19th day of April, A. D. 1907, a jury having been waived, a trial was had, and

the court found in favor of the intervener as against the plaintiff, and in favor of the plaintiff as against the defendant in the sum of $138.55. A motion for a new trial was in due time made by the plaintiff, and the case is now properly before this court for review.

*Fred S. Caldwell*, for plaintiff in error.
*W. B. Clark*, for defendants in error.

WILLIAMS, J. (after stating the facts as above). The only questions raised on the record in this case are: (1) Whether or not the contract hereinafter referred to creates an agency between the principal, the Border Queen Mill & Elevator Company, and its codefendant in error, A. F. Harness, as agent; and (2) whether or not said contract is void on its face as being in restraint of trade, and in violation of the statutes of the United States relating to trusts and unlawful combinations.

1. Said contract expressly provides that the said A. F. Harness, under said contract, is the lawful agent of the said Border Queen Mill & Elevator Company to handle and sell flour for it in and around Ponca City, Kay county, Okla. Further, that it is to ship said agent flour on the basis of the "Miller's Association prices" on the day the same is ordered. f. o. b. Ponca City, Okla., said A. F. Harness to pay the freight thereon, but the said mill and elevator company on settlement to reimburse said agent for said freight. It is further provided that at all times until sold said flour is the property of the said principal, and the money for which it is sold shall be remitted to said mill and elevator company. The agent obligates himself to keep said flour insured against loss or damage after it comes into his possession, and to remit to the principal in cash for all flour sold by him on the 15th and 30th days of each and every month during the life of said contract, deducting his commissions out of the money received for the sale of same, remitting the balance, and making a complete statement of his commissions received, which said commissions shall be 10 cents per barrel on all flour sold.

This contract, by all reasonable intendment, creates the relation of principal and agent. If it had the effect of a conditional sale of the flour from the mill and elevator company to said Harness, the result would have been the immediate creation of a debt at a contract price of the flour, less 10 cents a barrel as an alleged commission. But under no phase of the contract was there any liability on the part of Harness for the flour until the same was sold, except his undertaking to have same insured against damage or loss whilst in his possession. Under its plain terms, had he sold same in excess of the prices referred to, such excess would have belonged to the mill and elevator company, and not to him. His act would have been merely contrary to the instructions and stipulations of his principal, but would not have inured to his benefit, but that of his principal, if he elected to take such excess. Neither is there any question of estoppel presented, nor any proof tending to support the same, in this record.

2. As to the contention that the provision in said contract that said party is to sell said flour in accordance with the prices quoted from the Millers' Association, it does not arise as a matter of law that said contract contemplates a monopoly or trust. The Millers' Association may be organized for the quotation of prices of flour on the market each day, and not for the purpose of fixing the price. The presumption of law is that every act is lawful, and until the contrary is alleged and proved, or clearly appears, courts will not presume to the contrary. Any one seeking to have a contract declared void on the ground that same is in contravention of the laws of this state assumes the burden of sustaining such contention by proof. The presumption is that acts and contracts are lawful, unless it clearly appears that the same are in contravention of law. Of course, in a civil action, whenever the proof makes a *prima facie* case that the act or contract is prohibited by law, or is made in contravention of law, the burden shifts to the party claiming by virtue of such act or contract to rebut same by a preponderance of the evidence. Under the law, as a rule, no man is presumed to do wrong. On the contrary, he is pre-

sumed to do right, and so far as his life, liberty, and his property, and the products of his labor, are concerned, this presumption is a shield until it is overcome by testimony. If the Millers' Association existed in violation of the anti-trust and anti-monopoly laws, and said contract was void on that account, proof should have been offered to that effect, so that the law, through the proper administration of justice, could have stricken down such contract and declared it void. But contracts cannot be declared illegal and men deprived of their rights thereunder on vague suspicion or speculation. *McBratney v. Chandler et al.,* 22 Kan. 693 (2d Ed. 483), 31 Am. Rep. 213.

There appearing no reversible error in the record, the judgment of the lower court is affirmed.

All the Justices concur.