### CONSOLIDATED FLOUR MILLS CO. v. NUNN.

No. 17133—Opinion Filed Sept. 14, 1926.

Rehearing Denied March 8, 1927.

(Syllabus.)

**Sales—Action by Seller for Damages for Breach—Invalidity of Contract for Uncertainty.**

A contract in writing is pleaded as the basis of plaintiff's right to recover. Plaintiff alleges in its petition, in effect, that the said written contract required the defendant at a later date to give additional written instructions to the plaintiff which would modify, change, and clarify the original contract. An examination of the contract pleaded fails to disclose that there was any agreement contained therein which required the defendant to supplement the same by a letter or otherwise, and the contract as pleaded being, under the allegations of the petition, insufficient in itself to bind either the plaintiff or defendant, no cause of action is stated on which damages for breach of the alleged contract can be recovered.

Error from District Court, Kiowa County; E. L. Mitchell, Judge.

Action by the Consolidated Flour Mills Company against M. W. Nunn. Judgment for defendant, and plaintiff brings error. Affirmed.

Tolbert, Hunter & Tolbert, for plaintiff in error.

Bailey & McLaury, for defendant in error.

BRANSON, V. C. J. The Consolidated Flour Mills Company, a corporation, sued the defendant, N. W. Nunn, on two alleged causes of action. The trial court sustained a demurrer to both, and the plaintiff having elected to stand on the petition, judgment was entered dismissing the same, from which the plaintiff appeals. In the first count, plaintiff declared upon a written contract of purchase and sale of certain mill run products, to wit, flour, shorts, bran: said contract being dated November 2, 1923. After pleading the said contract, plaintiff asserts:

"That according to the terms and conditions of said contract the defendant herein was given the option to have said 110 barrels of flour packed in packages of either 48 lbs. or 24 lbs., as the defendant might thereafter notify the plaintiff"

—and certain other conditions as to the other mill run products. Plaintiff further alleges in said count that it was impossible for it to ship the merchandise ordered by the defendant without the specific instructions above referred to as **required by the terms and conditions of said contract.** That thereafter by mutual verbal arrangement the shipping period was extended to July 15th. That the plaintiff requested the defendant to advise it as to how defendant desired the 110 bbls. of flour packed and as to the details of his desires as to the other mill run products. That on the 28th day of June, 1923, the plaintiff advised the defendant that unless it received the instructions requested, it would sell the merchandise and demand the loss from the defendant, which the plaintiff did do, specifically pleading the difference between the amount at which the merchandise sold and the alleged contract, and prayed on said account a judgment for $227.50 with 6% interest from July 14, 1923.

On its second cause of action plaintiff pleaded the same contract as in the first cause of action and the same alleged option as to the method of packing the mill products, and thereafter pleaded:

"Plaintiff further alleges that in the sale of said merchandise it was necessary for the plaintiff to secure the services of a salesman and that by reason of said salesman traveling from town to town interviewing and soliciting customers and making other sales it was impossible to estimate or ascertain the amount of charges justly attributed to the expenses of said salesman as to any one particular contract of sale obtained and plaintiff further alleges the said contract provides that in the case of breach by the buyer the seller is entitled to recover an entry charge of 50 cents per barrel and $1 per ton on feed and that the plaintiff is entitled to recover for said entry charge from the defendant by reason of his breach of said contract the total sum of $61.25 in addition to the sum as damages as hereinbefore set out, being that amount of damages contracted for between the parties according to the terms of said contract and which amount it is impossible to ascertain."

On the two causes of action plaintiff prayed judgment in the sum of $445, with 6 per cent. interest from July 14, 1923.

Certainly plaintiff would not be entitled to recover under the allegations set forth in its second cause of action, unless the allegations contained in the first cause of action that the defendant breached his contract can be sustained.

It must be noted that the plaintiff pleads the contract. As we view it, the turning point in the alleged first cause of action, and apparently that on which the trial court sustained a demurrer thereto, is the allega-

tion quoted, supra, from the petition of the plaintiff to the effect that

"By the terms of the contract the defendant was given the option to have the flour packed in packages of either 48 lbs. or 24 lbs., as the defendant might hereafter notify the plaintiff"

—and to have the character of the other mill run products to be taken subsequently designated by written instructions from the defendant. Certainly the plaintiff, having pleaded the written agreement, must stand or fall on its provisions. The question is, Was there in such contract any such provision which imposed any duty upon the defendant as plaintiff pleads? The contract begins:

"The Winfield Flour Mills, of Winfield, Kansas (alleged to be the name under which the plaintiff operated its plant at Winfield) sells and the Nunn Grocery of Snyder, Okla., buys the following commodities, subject to the terms and conditions stated herein and printed on the back hereof, which terms and conditions are binding on both parties to this contract and cannot be modified except by written consent of both parties, and no verbal conditions, warrants, or modifications are valid:

| Quantity | Commodity | Package Size Kind | Brands | Price Per Unit |
|----------|-----------|-------------------|--------|----------------|
| Bbl. ton or cwt. | Flour feed etc. | Wood Cotton etc. | | Bbl. ton or cwt. |
| 110 | Flour | 48 | Cot Kansas Made | 6.45 |
| | | 24 | Cot Kansas Made | 6.65 |
| 75 | Feed | 100 | Burlap Gray Shorts | 1.65 |
| 125 | Feed | 100 | Burlap Mill Run | 1.45 |
| | | | Burlap Str. Bran | 1.30 |

"Terms and Conditions

"Terms of payment arrival draft with shipper's order bill of lading attached through First National Bank of Snyder Oklahoma."

On the back of the contract, which is referred to in the above-quoted part thereof, it is specifically provided again that the contract is not subject to change. Under the heading "Package Differentials," we find this:

"Unless expressly stipulated in this contract to the contrary, the prices named therein are on the basis of flour being packed in ninety-eight pound (98lb.) cotton sacks and feed being packed in one hundred pound (100 lb.) burlap sacks. If any change shall be subsequently made in the size of the packages the price shall be changed in accordance with the package differential promulgated by the Miller's National Federation and in effect at the date of this contract. Seller or buyer may not have the option of shipping flour in cotton or jute sacks where

either have been specified at the time of sale, except as may be agreed to by buyer and seller at time of shipment."

Another provision of the contract:

"That when buyer furnished specifications covering shipment or shipments at the time of making of this contract or any such specifications are included in the contract, seller shall construe such as final specifications and shipping instructions and shall ship accordingly."

We fail to find in the contract any alleged option such as is pleaded by the plaintiff, but, on the contrary, the contract specifically recites that the same is made on the basis of flour being packed in 98 pound cotton sacks, etc., unless there is a stipulation in the contract to the contrary. If the tabulation above set out, where it appears 110 bbl. ton or cwt. followed by "Flour 48 cot, Kansas Made 6.45," designated that the flour should be 110 bbls. (and we cannot tell from the contract whether it is 110 bbls. or 110 tons or 110 cwt.), then it appears that it was to be in sacks of size 48, which sacks should be made of cotton, and that the brand of the flour should be "Kansas Made." The tabulation immediately following it has no meaning unless we read something into the contract resting solely in parol, which the contract itself expressly prohibits. As to the other products and commodities ordered, the contract on its face is not susceptible of understanding, and if it imposed any obligation upon the plaintiff or gave the plaintiff any right to make a shipment at all, it was by reason of the provision above quoted under the heading of "Package Differential," for that part tabulated above is subject to the rule stated in the statute and by section 5075, C. O. S. 1921. It appears from the allegations of the plaintiff that it solicited the defendant to supplement or modify said contract in writing as a condition precedent to its shipping the commodities. The defendant refused to do this. But for the uncertainty contained in the tabulation above set out, or rather, if the tabulation had made no reference to the size of the packages, the said quoted provision as to 98 pounds packages, etc., would have authorized the shipment, but it is perfectly clear that the plaintiff, although contracting that no verbal or oral provision should modify the terms of the written document, found itself possessed of a written document on which it could not act without subsequent instructions from the defendant. There is nothing in the contract which gave the defendant any further option as pleaded in the matter, or required him to supplement

same. We think the contract was void for uncertainty, and this court refuses to create a liability under a contract such as here, where, under the terms of the contract pleaded, we cannot say that any liability existed without reading the same into the written document. Prowant v. Sealy, 77 Okla. 244, 187 Pac. 235; Hughes Produce Co. v. Pulley (Utah) 155 Pac. 337.

We think' that the judgment of the trial court in sustaining the demurrer is without error. Affirmed.

NICHOLSON, C. J., and MASON, LESTER, HUNT, CLARK, and RILEY, JJ., concur.

Note.—See 13 C. J. p. 267, §59.