## GRIFFIN GROCERY CO. v. KINGFISHER MILL & ELEVATOR CO.

No. 21865. April 24, 1934.

W. J. Horton, W. S. Horton, and E. M. Bradley, for plaintiff in error.

Brownlee & Blaine, for defendant in error.

PER CURIAM. This is an appeal from a judgment of the district court of Kingfisher county, Okla., sustaining a demurrer to the second amended petition of the plaintiff in error, who was plaintiff below, and rendering a judgment in favor of the defendant in error, defendant below.

For the purpose of determining the decisive questions involved in this appeal, it is not deemed necessary that we set out herein in haec verba the second amended petition of the plaintiff. It will be sufficient to state the material averments thereof, on which the plaintiff rests his cause of action. In this pleading, the plaintiff says that the defendant by a written contract sold to said plaintiff 5,000 bbls. of flour at $4.60 per bbl., including freight, and 10,000 bags of feed, consisting of 5,000 bags of mill run at $1.10 per bag, and 5,000 bags of shorts at $1.30 per bag, including freight; that said contract was subject to confirmation by the defendant, and that said defendant confirmed said contract, with modifications as follows: The quantity of feed was reduced from 10,000 bags to 5,000 bags, being 2,500 bags at $1.20 per bag, and 2,500 bags at $1.40 per bag, including freight, and that the said contract and modification thereof were contained and are set forth by certain letters, telegrams, and conversation.

The plaintiff alleges that the said original order, or contract, was subject to confirmation by the defendant, and that the defendant confirmed said contract with modifications. It says that a certain alleged contract was entered into by the plaintiff and defendant evidencing that the defendant sold to the plaintiff, subject to the terms and conditions stated in said alleged contract and printed on the back thereof, certain flour and feed at prices named therein, and that such sale was made upon the terms and conditions of said contract and were binding on both parties, and could not be modified except by written consent of both parties, and no verbal conditions, warranties, or modifications were valid as to the quantity, brands, and prices or units

of the commodities sold. The following is a copy as set out in said alleged contract:

| Quantity | Commodity (Flour Feed, etc.) | Brands | Price Per Unit. (Bbl. Ton or Cwt.) |
|---|---|---|---|
| 5,000 | | Kingfisher Best Grade High Patent | $4.60 |
| 10,000 | bags feed | Bran | 1.00 |
| | | Mill Run | 1.10 |
| | | Shorts | 1.30 |

The plaintiff alleges that after receiving this said alleged contract, the defendant wrote a letter to the plaintiff, the material part of which contained the statement that it was not able to fill the alleged contract or order, for the reason that it could not supply the amount of mill feed specified therein; that after receiving said letter, the plaintiff wrote to the defendant a letter stating its willingness to reduce the quantity of feed from 10,000 to 8,000 sacks; that in answer to this letter, the defendant wrote to the plaintiff that it still was not able to furnish even all of the 8,000 sacks of feed, but in said letter used the following language:

"If you could see your way clear to use the flour at the price and 5,000 sacks of feed at the price of $1.20 and $1.40 on Mill Run and Shorts, we will try to include some corn chops and meal in the cars at very close to cost price as we can ship them on the Rock Island at the balance of a proportional rate, which is much less than local carload rate out from Kingfisher.

"Frankly, we want to accept this order and would do so on very small profit, but we do not feel like putting ourselves in a hole that we would regret later. If you feel that you can cut the Mill Run and Shorts as we have suggested and which is considerably more than the flour in the contract will produce, we think we can come to some definite agreement.

"Thanking you for a prompt reply, we are,

Yours very truly,
"Kingfisher Mill & Elevator Co.
"JRL:CP By J. R. Lankard, Sec. & Mgr."

Plaintiff further alleges that it accepted the conditions set out in the letter by sending to the defendant the following telegram:

"McAlester, Oklahoma,
"August 14, 1923.
"Kingfisher Mill & Elevator Co.
"Kingfisher, Oklahoma.

"Referring your eleventh all right to avoid controversy will accept your proposition as outlined stop mail new contract stop wire confirmation.

"Griffin Grocery Company."

That in reply to this telegram, the defendant sent the following telegram to the plaintiff:

"Kingfisher, Okla.
"250 P. Aug. 14, 1923.
"Griffin Grocery Co.
"McAlester, Okla.

"You declined our proposition of eleventh by phone this morning we do not now care to entertain your later offer by wire to accept same.

"Kingfisher M & E Co."

And on the same day wrote to the plaintiff the following letter:

"Kingfisher, Oklahoma,
"August 14, 1923.
"Griffin Gro. Co.
"McAlester, Okla.

"Gentlemen:

"This will confirm our 'phone talk this morning wherein you refused to accept proposition made you August 11th, same being a compromise on a deal for flour and feed proposed some time ago.

"We hope to be able to do some business with you in the future as we are jealous of McAlester business.

"Yours truly,
"Kingfisher Mill & Elevator Co.
"A. R. L. El By A. R. Lankard, Pres."

Plaintiff further says in its second amended petition it accepted defendant's proposition and amendment of said contract by its said telegram, and that said contract, letters, and telegrams, modifying the same, formed a valid, complete, and binding contract and agreement of sale between the plaintiff and defendant for the sale and delivery by defendant to plaintiff, as per the terms of said contract, of 5,000 bbls. of Kingfisher best grade high patent flour at the price of $4.60 per cwt., and 5,000 sacks or bags of feed at the price of $1.20 and $1.40 on mill run and shorts, and that it is not true, as stated in defendant's said telegram and letter, that plaintiff refused in a telephone conversation of that day to accept defendant's proposition contained in its former letter modifying said contract. That, under and by virtue of the foregoing letters, telegrams and telephone conversation, there was formed by and between the plaintiff and defendant a contract of sale for said articles; that defendant refused to perform said contract; that during the time of these negotiations, the market price of these products had increased, and that plaintiff suffered damage in the sum of $5,500 by reason of the defendant's failure to furnish said commodities according to the terms of said alleged contract.

To this second amended petition the defendant filed its demurrer on four separate grounds. By reason of the views hereinafter expressed, it will not be necessary to consider any of the grounds of this demurrer, except that the petition does not state facts sufficient to constitute a cause of action. This demurrer was sustained by the trial court, and the plaintiff declined to plead further and elected to stand upon its second amended petition, and the court thereupon dismissed the cause and rendered judgment in favor of the defendant, and from this action of the court the plaintiff appeals.

The plaintiff relies upon the written instruments pleaded in its second amended petition as evidence of the alleged contract sued upon, and in determining whether a valid contract existed, it is, of course, necessary to resort to the instruments set up as constituting such contract. In the case of Halsell v. Renfrow, 14 Okla. 674, 78 P. 118, it is declared that:

"A memorandum to be sufficient under the statute of frauds must be complete in itself and leave nothing to rest in parol."

This seems to be a doctrine pronounced and adhered to by this court without exception and by numerous decisions.

The defendant attacks the sufficiency of the original order, or alleged contract, on the ground that it is not sufficiently definite and certain, and that the terms thereof cannot be determined from its contents; that under the heading "Quantity" appears the figures "5000", which does not show whether it means barrels, tons or hundredweight, or any other unit, while in the "Price Per Unit" column where the price is indicated to be Bbls. Tons or Cwt., the price is stated to be $4.60, and that the same defect exists as to the price of feed. It is true that commercial men in attempting to execute written agreements or contracts too often give their preparation but a "lick and a promise," and sadly neglect to state certainly and definitely what they mean, but. in view of the matters hereinafter expressed, it will not be necessary to consider this phase of the original order or alleged contract. However, it might be well to say in passing that, under the authority of Consolidated Flour Mills Co. v. Nunn, 122 Okla. 222, 254 P. 10, and other cases therein cited, it is very doubtful whether said original order or alleged contract is sufficiently definite to constitute an enforceable agreement.

The plaintiff largely relies upon the letter of the defendant, hereinabove referred to, as constituting an offer, which it accepted, and it would appear that this letter, together with the plaintiff's telegram attempting to accept the same, contains the decisive question in this case. The material parts of this letter are as follows:

"This will acknowledge receipt of your favor of the 9th and we regret that we do not feel that we can accept the contract with a cut of 2,000 sacks of feed.

"If you could see your way clear to use the flour at the price and 5,000 sacks of feed at the price of $1.20 and $1.40 on mill run and shorts, we will try to include some corn chops and meal in the cars at very close to cost price as we can ship them on the Rock Island at the balance of a proportional rate, which is much less than local carload rate out from Kingfisher.

"Frankly, we want to accept this order and would do so on very small profit but we do not feel like putting ourselves in a hole that we would regret later. If you feel that you can cut the mill run and shorts as we have suggested and which is considerable more than the flour in the contract will produce, we think we can come to some definite agreement.

"Thanking you for a prompt reply, we are."

To be more precise the following declaration in the letter is again quoted:

"If you feel that you can cut the mill run and shorts as we have suggested and which is considerable more than the flour in the contract will produce, we think we can come to some definite agreement."

And the pivotal language is, "we think we can come to some definite agreement."

In our judgment, this language does not constitute a definite and unqualified proposal by one party, which was unconditionally and without qualification accepted by the other party. In Corydon Milling Co. v. Noblesville Milling Co. (Ind. App.) 122 N. E. 362, it is said:

"Before there can be an agreement there must be a meeting of minds of parties on matter attempted to be agreed on, and no contract can be said to have been created where their minds have not agreed on one and the same thing."

In Dougherty v. Briggs, 231 Pa. 68, 79 Atl. 924, it is declared:

"When it is sought to establish a contract by letters which pass between the parties, containing proposals, answers and counter proposals, it must be made to appear that at some point in the correspondence there was a definite and unqualified proposal by one party which was unconditionally and

without qualification accepted by the other party."

Again, in 6 R. C. L., page 643, it is stated:

"Where the parties have left an essential part of the agreement for future determination, it is no doubt correct to say that the contract is not completed."

In the letter now being discussed, it appears that the language, "we think we can come to some definite agreement," is at most an invitation on the part of the defendant to the plaintiff to make some additional or new or different proposal, and this language imports that the parties at the time were in a state of negotiations.

In construing the instruments, letters, and telegrams involved in this case, one is confronted by the fact that they at most comprised mere negotiations. In 6 R. C. L., 616, we find the following doctrine:

"Whether the correspondence for the purpose of entering into a written contract is merely a preliminary negotiation or the contract itself, must be determined by the language used and the circumstances known to both parties under which the communications in writing are had."

This same author, on the same page, continues:

"The law does not make a contract when the parties intend none, nor does it regard an arrangement as completed which the parties thereto regard as incomplete."

Taking the plaintiff's second amended petition and all the letters, telegrams, and other writings together, we are driven to the conclusion that no valid enforceable contract is pleaded, and that an action for damages for the breach thereof cannot be maintained. In view of all these things, it appears that the contract never did reach that stage of completion which is known and designated in the law of contracts as a state of integration. The trial court committed no error in sustaining the defendant's demurrer to the plaintiff's second amended petition and rendering judgment in favor of the defendant, and the judgment of the trial court is therefore affirmed.

The Supreme Court acknowledges the aid of District Judge Montgomery, who assisted in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter the opinion, as modified, was adopted by the court.