WYNNE et al. v. McCARTHY et al.

McCARTHY et al. v. WYNNE et al.
Nos. 1638, 1639.

Circuit Court of Appeals, Tenth Circuit.
May 31, 1938.

Rehearing Denied Aug. 15, 1938.

Paul G. Darrough, of Oklahoma City, Okl., and Rayburn L. Foster, of Bartlesville, Okl., for H. C. Wynne and American Exchange Bank of Henryetta, Okl.

Stephen Chandler, Richard W. Fowler, John W. Swinford, and Tomerlin, Chandler, Shelton & Fowler, all of Oklahoma City, Okl., for J. T. McCarthy, Jr., and G. L. Meholin.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

In July, 1924, H. C. Wynne was appointed liquidating agent of the Colonial Supply Company, hereinafter referred to as Colonial, a corporation engaged in the business of selling oil well supplies. It operated stores at Henryetta and Wewoka, Oklahoma. An inventory was made of the stock of oil well supplies in the stores as of August 4, 1924. Thereafter, Wynne made sales from the stock in the regular course of trade.

In December, 1924, negotiations were entered into between Wynne and J. T. McCarthy, Jr., for the purchase by the latter of Colonial's stock of oil well supplies. Wynne furnished McCarthy with a copy of the August 4, 1924, inventory, which fixed the value of the stock at approximately $34,000. Wynne estimated that the sales made subsequently to August 4, 1924, would amount to approximately $10,000, and so advised McCarthy. McCarthy examined the inventory and inspected the stock in the two stores. Thereafter, and on December 19, 1924, Colonial and McCarthy entered into the written contract set out in note 1.

On April 13, 1925, Colonial assigned the contract to Wynne.

---

**1 Contract**

This agreement made this 19th day of December, 1924, by and between the Colonial Supply Company, a corporation party of the first part, and **J. T.** McCarthy, Jr., doing business as Hercules Supply Company, party of the second part, witnesseth:

That whereas the Colonial Supply Company is the owner of a stock of oil well supplies located at Henryetta, Oklahoma, also a stock of oil well supplies located at Wewoka, Oklahoma;

And whereas the party of the first part desires to sell and the party of the second part desires to buy said stocks of oil well supplies;

Now therefore, it is agreed by and between the parties hereto as follows: That the party of the first part will ship immediately to the party of the second part at Wortham, Texas, all of the stock of oil well supplies now on hand belonging to the party of the first part located in the cities of Henryetta and Wewoka, Oklahoma. Said property is listed and described in a certain inventory dated August 4th, 1924, except such part thereof as has been subsequently sold to this date.

It is agreed that approximately 65% of the stock shipped, as provided by the terms of this contract, shall b sold by the party of the first part to the party of the second part and the balance of 35% of such stock shall be consigned to the party of the second part for sale by the party of the second part for the use and benefit of the party of the first part, all under the terms and conditions hereinafter named.

It is agreed that that portion of the stock which shall be considered sold and that portion which shall be considered consigned, shall be designated and specifically agreed upon at the time said property is removed from the cars at Wortham, Texas.

It is further agreed that the party of the second part shall pay the party of the first part for the property so sold and so purchased, 75% of the present factory price of the said property, freight on the same to be paid by the party the first part to Wortham, Texas, said consideration to be paid as follows: $1,000.00 cash in hand, the receipt of which is hereby acknowledged; 50% of the total of the purchase price, less the $1,000.00 this day paid, shall be paid upon delivery of said supplies and material so purchased according to the terms hereinafter set out; 25% of the total purchase price sixty days from date material is delivered

A controversy arose between Wynne and McCarthy and in December, 1930, Wynne instituted a suit against McCarthy in the district court of Tarrant County, Texas. Issues were joined and the matter referred to a special master who took the proofs and made findings of fact and conclusions of law. McCarthy excepted to each of the findings of fact and conclusions of law and demanded a jury trial of the issues of fact. Thereafter, and on March 16, 1933, Wynne instituted this suit against McCarthy in the district court of Oklahoma County, Oklahoma. It was duly removed to the United States District Court for the Western District of Oklahoma.

In his petition and an amendment thereto Wynne pleaded the contract of December 19, 1924, and alleged it was agreed in the contract: that "approximately 65% of the stock shipped * * * should be sold * * * to the defendant and the balance of 35% thereof should be consigned to the defendant for sale by him for and on account and for the use and benefit of" Colonial; that the portion of the stock to be sold and the portion to be consigned should be designated and specifically agreed upon at the time the stock was removed from the cars at Wortham, Texas; that McCarthy should pay for the portion purchased 75 per cent. of the factory price; that the freight thereon should be paid by Colonial; that McCarthy should sell the consigned stock in the regular course of trade and begin-

ning January 1, 1925, should furnish Colonial each month with a list of the supplies sold; that Colonial should render McCarthy invoices thereof at the prevailing factory price less 15 per cent; that McCarthy should pay each invoice within 60 days from its date; that Colonial should have the right to sell any part of the consigned stock, and that McCarthy should receive as a handling charge 5 per cent of the prevailing factory price of supplies sold by Colonial, or the actual handling costs in the event they should exceed such 5 per cent.

Wynne further alleged that on April 13, 1925, all of the rights of Colonial in the stock and in the contract were duly assigned and transferred to him; that pursuant to the contract Colonial's entire stock of oil well supplies of the factory price and value of $35,436.95 was shipped to McCarthy and received by him; that it was mutually agreed between Colonial and McCarthy that the portion of the goods to be purchased by him and the portion to be held by him "on consignment for the account of" Colonial and sold for its account should not be selected and agreed upon as the goods were removed from the cars but "such selection and designation should be made at a later date to be agreed upon between the parties"; that McCarthy neglected and failed to fix a time and place to make such selection though frequently requested so to do by Wynne; that McCarthy after receiving invoices for the goods delivered to him, ad-

and accepted and 25% ninety days from date material is delivered and accepted.

It is agreed that that portion of the stock consigned to the party of the second part as hereinabove specified, shall be handled in the following manner; the party of the second part shall have charge of the same and shall sell the same in the usual course of business and shall report each month from January 1st, 1925 to party of the first part, giving a list of the materials so sold and thereupon the party of the first part shall render an invoice to the party of the second part for such materials at the present factory costs at the time of sale of such property, less 15%. Party of the second part shall pay said invoices within sixty days from date of invoice, and if paid within twenty days shall be discounted 2%.

It is further stipulated and agreed that the consigned stock as hereinabove specified shall, by mutual agreement between the parties hereto, be moved from point to point, freight on the same to be paid by the party of the first part.

Party of the first part shall have the privilege of selling any portion of such consigned stock and the party of the second part shall, at request of party of the first part, ship the same or any portion, thereof, to any person that the party of the first part may designate, and in consideration of the handling of such materials by the party of the second part, he shall receive 5% of the prevailing factory price; that should actual handling costs of such material exceed 5% he shall receive an additional sum sufficient to pay the actual handling costs.

It is further agreed by and between the parties hereto that the cash consideration hereinbefore set out agreed to be paid upon delivery of said supplies and material so purchased shall be pro rated according to the respective amount of each shipment and paid at the time each individual shipment arrives and is accepted.

In witness whereof the parties have hereunto set their hands this 5th day of January, 1925.

vised Wynne by letter dated April 9, 1925, the amount of goods was greatly in excess of the amount contemplated by the contract and he would not purchase and pay for 65 per cent of the total amount of goods received by him, but would purchase and pay for 65 per cent of the amount of goods contemplated by the contract and hold the remainder on consignment for sale for the account of Wynne in the manner provided in the contract with respect to the consigned goods; that such proposal was accepted by Wynne; that in September, 1925, McCarthy furnished Wynne with a list of goods received by him and designated a portion thereof as goods he would purchase and a portion thereof as goods he would hold on consignment, but in the letter transmitting the list McCarthy stated it was hurriedly made and a more complete list would be furnished in the future; that in December, 1925, McCarthy furnished Wynne with a list of the goods which he would hold on consignment and in January, 1926, furnished Wynne with a list of the goods which he would purchase, and stated the lists were subject to correction and approval by Wynne; that the lists furnished did not embrace all of the goods shipped to and received by McCarthy, and that the prices extended on the lists were less than the factory prices; that thereafter Wynne visited McCarthy's store at Wortham, Texas, and inspected the stock and found a number of items on hand shipped by Colonial to McCarthy that were not included in either list furnished by McCarthy; that Wynne advised McCarthy of such omissions; that McCarthy agreed to investigate and if there were omissions to make and furnish a new statement; that McCarthy failed and neglected to furnish a new statement; that in June, 1927, it was mutually agreed between Wynne and McCarthy that the factory prices should be determined by Bovaird Supply Company of Tulsa, Oklahoma, that Wynne and McCarthy would abide by the prices thus fixed, that McCarthy would make a new selection of the goods which he would purchase on the basis of 75 per cent of Bovaird's prices and that the remainder of the goods should be held on consignment; that Wynne caused the factory prices to be determined by the Bovaird Supply Company and furnished them to McCarthy and requested him to make selection of the goods to be purchased, but that McCarthy failed and refused so to do; that no selection of the goods purchased and the goods to be held on consignment was ever made by McCarthy and agreed to by

Wynne; that title to no part of the goods passed to McCarthy; that he should be deemed to hold the entire stock on consignment for the use and benefit of Wynne; and that the amounts paid by McCarthy should be considered as credits on the consigned goods.

Wynne prayed for an accounting by McCarthy of the goods sold and those remaining unsold and for judgment for the amount which the accounting should show to be due.

In his answer and cross-complaint McCarthy set up pleas of laches and the statute of limitations.

He admitted that the goods were shipped pursuant to the contract and received by him.

He alleged that his delay in selecting the goods to be purchased and those to be held on consignment was due to the failure of Wynne to furnish a list of the goods shipped; that he received invoices of the goods shipped about April 9, 1925; that he then agreed with Wynne to make the selections; that errors in the invoices necessitated checking and caused delay; that as soon as possible after the invoices were corrected he made selection of the goods to be purchased and the goods to be consigned. He denied that he had asserted the goods shipped were in excess of the amount contemplated by the contract, and that he agreed to accept factory prices of Bovaird Supply Company, to make a new selection of goods to be purchased and to hold the remainder as consigned stock.

McCarthy alleged that the prevailing factory prices of the goods shipped at the time of the shipment, excluding goods of the value of $966.71 returned to Wynne, amounted to $22,089.85; that Wynne as agent of Colonial agreed McCarthy should be credited with a 5 per cent allowance for freight which amounted to $1,104.49, leaving a net factory price value of $20,985.36; that the value of the goods purchased, less the 5 per cent freight allowance, was $14,990.01; that the factory price of the goods received on consignment was $5,995.35, and that he was obligated to pay therefor 85 per cent of the factory price less 5 per cent freight deduction, if, as and when sold; that he had paid Wynne on the goods purchased $11,800.82, or $558.33 in excess of 75 per cent of the factory price thereof; that in 1926 and 1932 he tendered consigned goods to Wynne, accompanied by a detailed list showing the factory price thereof of $2,836.55, or a net factory price after freight

deduction of $2,694.72; that he still tenders such goods to Wynne; that the goods remaining in his hands have no market value; that after deducting the consigned goods tendered back to Wynne there remains a balance of consigned goods for which he must account of $3,300.63; that 85 per cent of the factory price thereof amounts to $2,805.53.

He further alleged that it was necessary to move the consigned goods from store to store and that Wynne agreed that McCarthy should be allowed the freight charges incurred in so moving the consigned goods; that he incurred freight charges of $2,820.-30 in so moving the consigned goods and that he is entitled to a credit therefor amounting with interest to $3,585.12.

McCarthy further alleged that Wynne was indebted to him for taxes paid on the consigned goods in the principal sum of $775.78 and interest thereon in the sum of $177.44.

McCarthy further alleged that he paid Wynne for goods not actually received the sum of $3,568.92.

McCarthy prayed judgment on his crossbill in the sum of $8,155.59.

The cause was submitted to a special master who took the proofs and made findings of fact and conclusions of law.

The master found that McCarthy and Colonial duly executed the contract of December 19, 1924; that several days before the execution of the contract McCarthy was furnished with a copy of the August 4, 1924, inventory and that he made a personal inspection of the stock in the stores and observed that certain of the supplies were old, obsolete, and unsalable; that the parties estimated the value of the goods in the August 4, 1924, inventory at $34,000 and the goods on hand at $25,000.

That pursuant to the terms of the contract all the supplies in the stores at Henryetta and Wewoka, Oklahoma, were shipped to McCarthy; that two carloads were shipped to Wortham in January, 1925; that in February, 1925, one carload was shipped to Vernon in place of Wortham pursuant to mutual agreement of the parties.

That Wynne made a shipping list of all the materials and supplies as they were removed from the stores at Henryetta and Wewoka and loaded on the cars; that he mailed the shipping list to McCarthy about April 6, 1925, with the factory prices extended thereon; that such shipping list was received by McCarthy on April 9, 1925.

That Wynne and McCarthy, assisted by the agents and clerks of McCarthy, made a receiving list of the supplies and materials shipped to Wortham as they were unloaded from the cars; that Wynne and the agents and clerks of McCarthy made a receiving list of the supplies and materials shipped to Vernon as they were unloaded from the car; that Wynne took these receiving lists to Henryetta and checked against the shipping list; that Wynne delivered the receiving lists to McCarthy in the month of March, 1925; that within a day or two after the supplies and materials were received by McCarthy he made his own receiving list.

That upon receipt of the supplies and materials by McCarthy he immediately placed them in his stock of other supplies and materials of like nature and offered them for sale in the ordinary course of business at the ordinary retail prices for supplies and materials of like character.

That the receiving lists made by the parties as the supplies and materials were unloaded from the cars are binding on the parties.

That the aggregate of the invoices furnished to McCarthy by Wynne was in excess of $39,000; that McCarthy insisted that the prices extended thereon were not the prevailing factory prices and suggested that prices be obtained from some reliable supply company; that Wynne procured factory prices from the Bovaird Supply Company on the detailed list of the supplies and materials shipped and received, and that the Bovaird prices on the shipping list amounted to $35,-436.95, and on the receiving list to $35,333.-95.

That in attempting to arrive at an agreement as to factory prices it was mutually agreed by Wynne and McCarthy that McCarthy should receive a 5 per cent deduction from the factory price as a freight allowance.

That McCarthy construed the contract to mean that he was only obligated to select for purchase goods which could be identified on the August 4, 1924, inventory and that he attempted to make a selection upon that basis with certain claimed deductions and contended that all other goods should be considered as consigned; that Wynne never accepted McCarthy's construction but insisted that the contract covered all the goods shipped from the stores at Henryetta and Wewoka.

That no reliable and complete selection of goods to be purchased and goods to be

consigned was ever made by McCarthy and furnished to Wynne; that the lists furnished by McCarthy in September, 1925, December, 1925, and January, 1926, were incomplete; that large deductions were made for goods marked "not received," "unable to locate," and "of no value."

That no accounts were ever rendered to Wynne by McCarthy of sales made with the exception of two small sales upon which McCarthy claimed commissions of $46.56.

That it is impossible to ascertain the amount of supplies actually sold by McCarthy for the reason that the supplies shipped and received by McCarthy under the contract were mixed and intermingled with the other supplies and materials of similar nature in McCarthy's stores and were moved from place to place by McCarthy.

That there was no mutual agreement between Wynne and McCarthy that the goods should be shipped from point to point in an effort to sell them and the freight charged to Wynne, except as to one specific instance, and that there was no proof as to the amount of freight incurred in that instance.

That McCarthy returned to Wynne goods in the amount of $966.71 for which he is entitled to credit.

McCarthy admitted in his answer that he was a resident of Tarrant County, Texas. The master further found that McCarthy had at all times since December, 1924, been a nonresident of the state of Oklahoma and absent from the state of Oklahoma with the exception of one or two days.

The master further found that the value of the supplies and materials at the prevailing factory prices delivered to McCarthy was $35,436.95, from which should be deducted the following items:

| | |
|---|---:|
| Difference shown in the shipping list price and the receiving list price | $ 103.00 |
| 5% deduction for freight | 1,710.34 |
| Commission for sale of consigned goods | 46.56 |
| Materials sold from stock from Aug. 4, 1924 to date of shipment | 3,827.99 |
| Materials returned by the defendant J. T. McCarthy, Jr., to the plaintiff | 966.71 |

leaving a net balance of $28,782.35.

The master concluded as a matter of law that the contract is one of sale of the entire stock of merchandise; that McCarthy is not entitled to reimbursement for taxes or freight incurred in moving the goods from place to place in an effort to make sales thereof; and that Wynne is entitled to recover judgment against McCarthy on the following basis:

| | |
|---|---:|
| 65 per cent of goods at 75 per cent of factory prices | $14,031.39 |
| 35 per cent of goods at 85 per cent of factory prices | $ 8,559.73 |
| Or an aggregate of | $22,591.12 |
| Less credits for payments made and other deductions aggregating | $11,800.83 |
| Leaving a net balance due of | $10,790.29 |

The master recommended judgment accordingly.

On exceptions to the master's report the trial court reduced the factory prices of the goods from $28,782.35 to $23,782.35 on account of goods which were obsolete and secondhand, and entered a decree awarding Wynne judgment against McCarthy for $5,790.29.

To review the evidence would unduly extend this opinion. Suffice it to say, that the findings of fact made by the special master, except as to certain deductions credited to McCarthy, are fully supported thereby.

Under Section 104, O.S.1931, 12 Okl. St.Ann. § 98, as construed by the Supreme Court of Oklahoma, the period that McCarthy was absent from the state after the cause of action accrued should be excluded in computing the period of limitation because during that period personal service of process could not be made upon McCarthy.[2] It follows that the present action is not barred by the statute of limitations.

The contract provided that 35 per cent of the goods should be consigned to McCarthy for sale by him for the use and benefit of Colonial. Colonial retained the privilege of selling any portion of the consigned goods and the contract provided that in the event of such a sale McCarthy should receive only his handling costs. The consigned goods could only be moved from place to place upon the mutual consent of McCarthy and Colonial and when so moved

2 Knupp v. Hubbard, 130 Okl. 111, 265 P. 133, 135; Bean v. Rumrill, 69 Okl. 300, 172 P. 452, 458; Walker v. L. E. Meyers Const. Co., 175 Okl. 548, 53 P.2d 547, 548; Tucker v. Leonard, 144 Okl. 264, 291 P. 124, 133.

Colonial was to pay the freight charges incident to the moving. The parties by their subsequent acts and statements and by the allegations of their pleadings construed the contract as providing for a consignment for sale and not a sale to McCarthy as to 35 per cent of the goods and we are of the opinion it should be so regarded.[3]

The contract expressly provides: "that portion of the stock which shall be considered sold and that portion which shall be considered consigned, shall be designated and specifically agreed upon at the time said property is removed from the cars at Wortham, Texas."

It thereby reserved an essential element for the future agreement of the parties. Such future agreement was necessary to determine and designate the goods, title to which was to pass to McCarthy and for which he was to pay 75 per cent of the then factory prices, and the goods he was to receive and sell on consignment for the benefit of the Colonial and for which he was to account to Colonial for 85 per cent of the prevailing factory price as sales were made therefrom. Until there was a selection of the goods to be purchased there was in fact no agreement by the parties as to price because it was impossible to apply the price formula of the contract to the specific goods and arrive at the price thereof.

■ Where an essential element of a contract is reserved for future agreement of the parties, no legal obligation arises until such future agreement is consummated.[4]

■ McCarthy failed to make and submit true and complete lists of the goods selected to be purchased and the goods to be held on consignment for sale and no selection and designation of the goods to be purchased and the goods to be held on consignment were ever made and agreed to by the parties.

It follows that the contract to sell was never consummated and title to the goods shipped and received never passed to McCarthy.

Notwithstanding that the contract was never thus consummated, McCarthy placed the goods in his stores, commingled them with other like goods and offered them for sale in the usual course of trade. In so doing he was guilty of conversion.

In his petition and the amendment thereto Wynne alleged that neither the title to the goods to be purchased nor the goods to be consigned passed to McCarthy, but remained in Colonial and Wynne as its assignee. He further alleged facts showing conversion of the goods by McCarthy and asserted he was entitled to recover from McCarthy the factory price of such goods less a discount of 15 per cent.

■ Since the contract never became obligatory on either party and since the title to the goods never passed to McCarthy, Wynne's remedy is an action for conversion or upon an implied promise to pay the value of the goods.

■ Whether the action be regarded as one in tort for conversion or upon an implied contract, the measure of damages is to be determined by the law of Texas. The measure of damages in an action for tort is determined by the law of the place of the wrong; and in an action on a contract by the law of the place of the contract.[5]

■ Under the law of Texas the measure of damages, whether the action be for a wrongful conversion or for the value of the property converted upon the promise which the law implies from the conversion, is the reasonable value of the property at the time of the conversion, measured by the market value thereof if it has a market value at the time of the conversion, with interest from the date of the conversion.[6]

3 See Williston on Sales, 2d Ed., Vol. 1, § 338; In re Columbus Buggy Co., 8 Cir., 143 F. 859, 860, 861; Sturm v. Boker, 150 U.S. 312, 329, 330, 14 S.Ct. 99, 37 L.Ed. 1093; In re Klein, 2 Cir., 3 F.2d 375, 377; Barnes Safe & Lock Co. v. Bloch Bros. Tobacco Co., 38 W.Va. 158, 18 S.E. 482, 484, 22 L.R.A. 850, 45 Am.St.Rep. 846.

See, also, Barteldes Seed Co. v. Border Queen Mill & E. Co., 23 Okl. 675, 101 P. 1130, the only Oklahoma decision we have been able to find bearing on this question.

4 See Griffin Grocery Co. v. Kingfisher Mill & Elevator Co., 168 Okl. 157, 32

P.2d 63, 66; Boatright v. Steinite Radio Corp., 10 Cir., 46 F.2d 385, 389; Williston on Contracts, Rev.Ed., Vol. 1, § 45.

5 Restatement, Conflict of Laws, §§ 412, 413; New York Central R. Co. v. Chisholm, 268 U.S. 29, 32, 45 S.Ct. 402, 403, 69 L.Ed. 828, 38 A.L.R. 1048; Lauria v. E. I. Du Pont De Nemours & Co., D.C.N.Y., 241 F. 687; Royal Mail Steam Packet Co. v. Companhia de Navegaco Lloyd Brasileiro, D.C.N.Y., 31 F.2d 757, 758; Riddle v. Hudson, 68 Okl. 172, 172 P. 921, 924.

6 Ferguson v. Plainview National Bank, Tex.Civ.App., 42 S.W.2d 834, 836; Jackson v. Taylor, Tex.Civ.App., 166 S.

The contract price while it may be of evidentiary value in arriving at the market value is not conclusive, first because the damages are to be measured by the market value, and second, because until there was a selection and designation of that portion of the goods to be paid for at 75 per cent of the prevailing factory prices and that portion to be accounted for at 85 per cent of the prevailing factory prices, the price formula fixed by the contract was impossible of application.

It follows that the measure of damages pleaded in the petition was not applicable.

No deduction should be made on account of goods sold after the August 4, 1924, inventory since McCarthy is liable only for the goods actually received by him. Freight should be considered only as a deduction from factory prices in arriving at the actual value of the goods. Freight for moving the goods from place to place in Texas and taxes paid by McCarthy should not be considered since the action is for the value of goods had and received upon McCarthy's implied promise to pay therefor arising from his tort.

Let the judgment be vacated and the cause remanded with instructions to permit Wynne to amend his petition and to proceed further in accordance with this opinion.

The costs of this appeal will be assessed equally against the parties.

W. 413, 414; Harrison v. McGehee, Tex. Civ.App., 139 S.W. 613, 615; Lincoln v. Packard, 25 Tex.Civ.App. 22, 60 S.W. 682; Burmarsal Co. v. Lake, Tex.Civ. App., 272 S.W. 582; American Surety Co. of N. Y. v. Hill County, Tex.Civ. App., 254 S.W. 241; Lloyds America v. El Paso-Hudspeth Counties Rd. Dist., Tex.Civ.App., 107 S.W.2d 1008, 1012; Sanders v. O'Connor, Tex.Civ.App., 98 S.W.2d 401, 408.