## MID-CONTINENT PETROLEUM CORPORATION v. RUSSELL.

### No. 3723.

United States Court of Appeals
Tenth Circuit.

March 18, 1949.

Rehearing Denied April 13, 1949.

R. H. Wills, of Tulsa, Okl. (J. P. Greve and Oscar E. Swan, Jr., both of Tulsa, Okl., on the brief), for appellant.

Leon C. Shipp and T. Murray Robinson, both of Oklahoma City, Okl. (W. E. Robertson, of Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

Mid-Continent Petroleum Corporation, hereinafter referred to as the company, sued Frank Russell, hereinafter referred to as Russell, to recover damages for breach of contract. The cause was tried to the court without a jury; judgment was entered for Russell; and the company appealed.

The judgment was based primarily upon the conclusion of the court that the parties did not enter into a binding contract. That conclusion is challenged. It is contended that a letter written by the company to Russell under date of June 18, 1846, and accepted by Russell the following day, constituted a completed contract with binding effect upon the parties. These facts were established, either by admissions or by evidence without any substantial conflict. The company owned a mineral lease covering two tracts of land in McClain County, Oklahoma, one containing seventy acres and the other sixty acres. By its terms, the lease was to terminate on October 11, 1946, unless oil or gas in paying quantities was being produced from the premises at that time, or unless a well was then being drilled. Russell was engaged in drilling a well at a point approximately one mile from the land covered by the lease owned by the company. Being informed that the company desired to effect arrangements for the drilling of a well on the land covered by its lease, Russell sought and obtained a conference with the vice-president of the company. As the result of the conference, the company prepared and mailed to Russell a letter dated June 18. The letter recited at the outset that when duly accepted by Russell and one copy thereof returned to the company within ten days from its date, it should constitute their agreement, as therein stated. It provided that within thirty days after the date of the letter, Russell should commence operations for the drilling of a test well on the seventy-acre tract by moving in material

and a derrick; that not later than sixty days after the date of the letter, he should commence actual drilling; that he should thereafter prosecute the drilling with due diligence to a depth sufficient to test the Wilcox Sand Horizon, estimated to be found at the approximate depth of 11,000 feet; that upon demand after Russell commenced the drilling of the test well, the company should assign to him all of its interest in the lease insofar as it covered the seventy-acre tract; and that the company or its nominee should have the preference right to purchase the oil produced from the land at the usual posted market price, subject to Russell's sale of his interest in the leasehold. It further provided that it was understood and agreed that the letter did not fully set out the complete details of the company's assignment of the lease and of Russell's obligation to drill the well, but that upon receipt of an accepted copy of such letter the company should prepare and submit to Russell its usual letter agreement setting out more fully the details of the agreement, "The terms of such letter agreement to be along the lines of this letter." And it concluded with the provision that it was not binding upon the company unless one copy thereof with Russell's acceptance thereon was delivered to the company within ten days from that date. On the following day, Russell accepted the letter in writing and returned the accepted copy to the company. Mere preliminary negotiations respecting the terms of an agreement do not constitute an obligatory contract. Preliminary negotiations leading up to the execution of a contract are to be distinguished from the contract itself. No contract is complete without the mutual assent of the parties to all essential elements of the agreement. The minds of the parties must meet and unite on all essential elements before an effective contract is created. Griffin Grocery Co. v. Kingfisher Mill & Elevator Co., 168 Okl. 157, 32 P. 2d 63; O'Neal v. Harper, 182 Okl. 52, 75 P. 2d 879.

 Where the parties presently assent to all of the essential terms of an agreement and intend thereby to be presently bound, the mere reference in conjunction therewith to a subsequent contract does not render the contract entered into unenforceable. Western Roofing Tile Co. v. Jones, 26 Okl. 209, 109 P. 225, Ann.Cas.1912B, 127; Pierce Petroleum Corp. v. Hales, 147 Okl. 42, 294 P. 160; Fry v. Foster, 179 Okl. 398, 65 P.2d 1224; Suttle v. Chadwell, 196 Okl. 298, 164 P.2d 880. But where some of the material terms and conditions of the agreement are still unsettled and are reserved for negotiations, no completed contract is created. Griffin Grocery Co. v. Kingfisher Mill & Elevator Co., supra; Wynne v. McCarthy, 10 Cir., 97 F.2d 964, certiorari denied, 317 U.S. 640, 63 S.Ct. 31, 87 L.Ed. 515.

 The letter written by the company and accepted by Russell must be viewed as a whole in determining the question whether the parties intended and understood that they were presently giving their mutual consent to all of the essential elements of a completed contract, or whether they intended to reserve for future negotiation and determination some essential elements which were to become and be part of the contract. The letter recited at the beginning that when accepted and an accepted copy was returned to the company, it would constitute the agreement of the parties, as thereinafter set forth. Then followed the provisions relating to the assignment of the lease, the drilling of the test well, and the prior right to purchase the oil and gas produced from the premises. Standing alone, those provisions appeared on their face to be complete. But the letter did not end there. It continued in language too clear for misunderstanding that it was understood and agreed that the letter did not set out the complete details of the company's assignment of the lease and of Russell's obligation to drill the well. Immediately after stating that it was incomplete in respect to those matters, the letter stated that upon receipt of an accepted copy, the company should prepare and submit to Russell a subsequent letter. It further stated that the subsequent letter would be the usual letter agreement of the company. And it further stated that the subsequent letter would be along the lines of the first letter. Manifestly, the

obligation of the company to assign the lease and the obligation of Russell to drill the test well were not only essential elements of the agreement but were elements of the most vital character. The letter imported on its face that the parties did not intend or understand that they were presently giving their mutual assent to all of the essential elements of a completed contract but were reserving for future determination some of the essential elements which were to become and be part of their agreement and therefore it did not constitute a binding contract. Cf. Griffin Grocery Co. v. Kingfisher Mill & Elevator Co., supra.

The next contention is that even though the provision in the letter under consideration respecting the incompleteness of the contract be construed to the effect that the parties were not then in agreement as to some of the details of their respective obligations and intended subsequently to reach an accord concerning such details, the incompleteness related only to details and did not render the contract unenforceable as to the obligations which it created and imposed upon the parties. Where contracting parties give their mutual assent to all of the essential elements of an agreement and intend thereby to be personally bound the contract is not rendered unenforceable merely because it fails to set out all of the details with respect to the subject matter. Roig v. Electrical Research Products, 1 Cir., 57 F.2d 639; Union States Life Insurance Co. v. Bernert, 161 Or. 44, 87 P.2d 774. But here the letter affirmatively disclosed on its face that its incompleteness related to the company's assignment of the lease to Russell and to Russell's obligation to drill the test well, and those were not matters of mere detail. They were of the very essence of the contract.

The further contention is that treating the letter of June 18 and and a subsequent letter which the company wrote to Russell under date of July 3 as merely constituting an offer of contract, and that acceptance of such offer was a prerequisite to the creating of a binding contract, Russell did effectively accept such offer and thereupon a completed contract was effectuated. The company prepared and mailed to Russell a letter dated July 3, and he received it on July 11. It referred at the outset to the first letter and to Russell's acceptance of it. It stated that the first letter should become a part of the second to the same extent as though set forth at length therein. It further stated that at the time of the writing and the acceptance of the first letter it was contemplated that the first letter should be amplified and supplemented in such manner as to set out more fully certain details to govern the respective obligations of the parties in effectuating and consummating their understanding and agreement, and that pursuant thereto the parties agreed upon the supplemental provisions set forth in the second letter. It contained provisions requiring Russell to do certain things in connection with the drilling of the test well, to keep certain records, and to furnish the company certain information. It gave to the company certain rights and privileges, including the right to take over the well if Russell should determine to abandon it, with provision that in such event the company should reimburse Russell for the equipment at its then salvaged value, and with the further provision that in such event Russell should on request assign the leasehold estate back to the company and should hold it harmless of certain liability. It provided that time and literal compliance were of the essence of the agreement. And it concluded by saying that if such supplemental provisions "meet with your approval, please accept the duplicate counterpart hereof and return same to us within Ten (10) days from this date." The letter did not meet with Russell's approval, and he did not expressly accept it in writing and return the counterpart thereof to the company. Instead, he sought to discuss the matter with the vice-president of the company on long distance telephone but was unable to do so. Where an offer of contract prescribes the manner and time of acceptance, the acceptance must be in accord with the offer in order to create a contract. Brach v. Matteson, 298 Ill. 387, 131 N.E. 804; Suhre v. Busch, 343 Mo.

170, 120 S.W.2d 47; Federal Farm Mortgage Corp. v. Dixon, 185 Ga. 466, 195 S.E. 414. But if an offer merely suggests or requests acceptance in a certain manner and within a specified time, another method or time of acceptance is not precluded. Differing from the first letter, the second merely requested that Russell accept the duplicate counterpart and return it within ten days. It did not expressly exact or require that it be accepted in writing and within ten days, and therefore it did not prescribe an exclusive manner and time of acceptance. C. R. Anthony Co. v. Stroud, 189 Okl. 104, 114 P.2d 177.

After Russell accepted the first letter and before he received the second, he had the seventy-acre tract surveyed, viewed it in person, determined the most likely way to get materials onto it, selected the location of the test well, and arranged with third persons to dig slush pits and cellars, erect a derrick, and do other things in preliminary preparation for the drilling of the well. After receipt of the second letter, and after notice of the terms and conditions which the company was proposing in completion of the contract, the slush pits were dug, the derrick was erected, and other things were done in preparation for the drilling of the well, for which Russell expended approximately $10,000. After Russell received the second letter, and after he and his attorney consulted in respect to its contents, the attorney requested the company to forward to him for examination a certain supplemental abstract covering the land. Moreover, after receipt of the second letter, Russell sought to assign or transfer the lease to a third person on being reimbursed for his expenditures. And after receiving the second letter, Russell sought to pool the lease with a lease or leases owned by a third person in a drilling and development program. These acts considered in their totality constituted an implied acceptance of the terms and conditions set forth in the two letters and effectuated a completed contract between the parties. C. R. Anthony Co. v. Stroud, supra.

As already indicated, the first letter to Russell was written on June 18, 1946, and it provided among other things that he should commence actual drilling of the test well not later than sixty days after the date of the letter. On August 26, 1946, Russell caused notice to be given to the company that he would not drill the test well, and it was never drilled. The failure and refusal to drill the well constituted a breach of the contract, and under the law of Oklahoma the measure of damages in a case of this kind for the breach of a covenant in a contract to drill a well for oil and gas is the reasonable cost of drilling the well at the time it should have been drilled. United States Fidelity & Guaranty Co. v. Gray, 106 Okl. 222, 233 P. 731; Eysenback v. Cardinal Petroleum Co., 110 Okl. 12, 236 P. 10; Newman v. Roach, 111 Okl. 269, 239 P. 640; Okmulgee Producing & Refining Co. v. Baugh, 111 Okl. 203, 239 P. 900; Campbell v. Wood, 137 Okl. 90, 278 P. 281; Lorraine Petroleum Co. v. Bartlett, 138 Okl. 8, 280 P. 286.

The judgment is reversed and the cause remanded.